People of the State of Illinois ex rel. Joseph Gaynor, James Coburn and Joseph F. Biagi, Jr., Appellees, v. Board of Fire and Police Commissioners of the Village of Oak Park, et al., Appellants.

Gen. No. 47,050.

First District, First Division.

June 19, 1957.

Released for publication October 4, 1957.

Arthur C. Thorpe, of Chicago, for appellants. McCarthy, Toomey & Reynolds, of Chicago (John E. Toomey, and John M. Kaveny, of Chicago, of counsel) for cross-appellants.

Michael F. Ryan, of Chicago (Richard F. McPartlin, Jr., of Chicago, of counsel) for appellees.

JUDGE SCHWARTZ delivered the opinion of the court.

The issue presented to us is whether a civil service commission such as the defendant Board can change its method of marking and prepare a new eligible list after it has held an examination and announced the list of successful candidates. The good faith of the Board and the members thereof is not questioned. Their authority to do so under the law is challenged. The trial court held that the Board could not make the change.

The examination in question was for the office of Sergeant of Police of Oak Park. Plaintiffs, being patrolmen who had served the minimum of two years required, took the examination October 4, 1955, and on October 11, 1955, the chairman of the Board notified them that they had passed and that their names would be placed on the eligible list kept on file in the office of the secretary of the Board. Plaintiffs inspected the list and found that they were, respectively, second, third and fourth thereon. On October 13, 1955, plain-. tiffs received a notice from the chairman that a request had been made to fill two vacancies for the position of Sergeant and that the names of the four top men on the list, being Milton Mollenhauer, one of the defendants, and the three plaintiffs, would be submitted. No action followed until January 7, 1956, when the Board adopted a resolution stating it had misinterpreted its rules and that greater weight should be given seniority. It adopted a new method of marking for seniority, which we will consider later. The result was to reduce the positions of plaintiffs on the list as follows: Gaynor from 2nd to 5th place, Coburn from 3rd to 7th place, and Biagi from 4th to 12th place. Thereupon plaintiffs filed this suit. After a hearing

the court held that the marking system originally used was valid and ordered the Board to rescind its resolution revising the promotional list and to comply with the law relative to the submission of names to fill vacancies. It is from that order that defendants have appealed.

Section 6 of the Civil Service Act [Ill. Rev. Stats. 1955, ch. 24½, § 8] provides that the examiners shall *fairly* test the relative capacity of the examinees to discharge the duties of the positions to which they seek to be appointed. In compliance with that section, the rules of the Board provided for four types of tests which we will call "categories," as follows: (1) written, (2) oral, (3) efficiency, and (4) seniority. Grades on the written, oral and efficiency examinations were each based on 100 per cent. The marks for seniority were computed by first allowing all candidates a starting grade of 70 and adding points up to 30 for length of service, as provided in the rules later discussed. Thus, a total of 100 points would be the top mark for seniority. This in the absence of an adjusting factor would bring the total maximum mark of the four categories to 400. It is recognized that the categories cannot in fairness be treated equally. Obviously, a written examination for janitors would not be given the same weight as one for stenographers. For a librarian or statistician a written examination would be almost sufficient in itself. For a laborer, it would be of lesser value. It is therefore incumbent upon the Board in determination of the final result to apply a weight factor to each category, that is, to determine the relative importance of the different categories to the position involved and apply a method to carry out its judgment. The application of such a weight factor is described in People ex rel. Duffy v. Hurley, 402 Ill. 562, 568. The method may vary but the principle is the same.

In the instant case the Board, prior to its resolution of January 7, 1956, clearly had in mind a total com-

bined maximum result of 100 for all four categories, even though the respective marking for each group was also based on 100. This required a reduction of the marking in each category. This was done by applying a factor of 65 per cent to the written examination, 10 per cent to the oral, 10 per cent to efficiency, and 15 per cent for maximum seniority. Thus a final perfect score would have been 100 per cent. To accomplish the plan the marking for seniority required a special formula. Chapter 6 of the Rules and Regulations of the Board provided that seniority should be computed by adding points up to 30 for each year of service to a common starting mark of 70 or above for all candidates, so that a perfect score for seniority would be 70 plus 30. (We will later consider the significance of the words "or above.") The application of the basic mark of 70 to all candidates before applying the weight factor was done to conform with the pattern of using 100 as a maximum figure for all categories as well as the maximum of the final result. In advancement of their own theory as to how the marks should be computed, some of the defendants have argued that there is nothing sacred about the figure 100. That is true. Euclidian geometry has prevailed for centuries and has been worshipped as the essence of truth, yet in our own time a non-Euclidian geometry has been developed as an alternative. Likewise, there is nothing adamant about the figure 100, but it is beyond cavil that this is a method extensively used, and what the Board had in mind both in the separate categories and the final result was the use of the figure 100 as the maximum.

The same method had been used in two prior examinations, one for captain in the fire department and one for lieutenant in the police department. It was copied from the method used by the Civil Service Commission of the city of Chicago and is used by other civil service commissions. One of the exhibits showing examina-

tion marks for seniority has on it a notation that the marks were computed on the Chicago basis. The pertinent portion of the Chicago Rule is as follows:

"The average marking to be entered for seniority shall be obtained by adding to a standard mark of 70, as follows:"

The Oak Park Rule is as follows:

"The average marking to be entered for seniority shall be obtained by adding to his mark of 70, or above, as follows:"

Defendants point out that there are differences between the Chicago rule and the Oak Park rule in that the word "standard" is used in the Chicago rule, and the words "or above" are used in the Oak Park Rule. From this it is argued that to the total marks for the written, oral, and efficiency categories should be added the total number of points from zero to 30 given for seniority. This does violence to the whole meaning of the rule. It is not clear to us why the draftsman did not follow the Chicago rule literally. Perhaps he had a sense of pride in original draftmanship or perhaps had in mind the prerequisite of two years experience as patrolman and that thus each examinee would start with a seniority mark of 76 with additional credits for subsequent years of service. The words cannot refer to marks in other categories since those marks would have no relevancy in determining marking for seniority. It is nevertheless clearly apparent that the Board had in mind in the adoption of these rules the use of 100 as a maximum figure for all categories, with the use of an adjusting factor which would make the maximum final result 100. Under the method proposed by defendants the final total mark of candidates, exclusive of military preference, could well be above 100.

Other suggestions are made in the briefs of countercomplainants as to how the markings should be computed, but as we have come to the conclusion that the

333

method used was the correct one and the one intended, it would serve no purpose to consider these suggestions. Defendants have pointed out that there must be added to the final score the points allowed for preference for military service, although this may bring the total to more than 100. This, however, has no relevance to the issues here involved. It is an exception provided by statute and is not a basis or precedent for similar application to any other category.

We must now consider the validity of the change attempted by the Board. On January 7, 1956, the Board passed the resolution providing that marks for seniority, instead of starting with a grade of 70, should stand at zero to 30, and a factor of 50 per cent applied, or to put it simply, an examinee would get from zero to 15 for his ultimate mark for seniority, which would be added to the net grading of the other categories. The result, as we have said, was to drop plaintiffs to places on the list considerably lower than those held on the basis of the original marking. The Board argues that the original resolution intended that there should be a spread of 30 points for seniority, and hence the change. The unreasonableness of this interpretation must have been recognized by the Board because when it attempted to correct the so-called error, it was not done by allowing a maximum of 30 points for seniority, but 15. In the end, therefore, it was not a matter of correcting an error but of applying, after an examination had been given and marks stated, a heavier weight for seniority.

The authority of the Board with respect to the matters involved in the instant case is derived from Chapter 24, Article 14, of the Cities and Villages Act (Ill. Rev. Stat. 1955) which provides for civil service for members of the fire or police departments of municipalities. The sections of particular relevance here are:

"14—8. Eligible list.) The board of fire and police commissioners shall prepare and keep a register of persons whose general average standing, upon examination, is not less than the minimum fixed by the rules of the board, and who are otherwise eligible. These persons shall take rank upon the register as candidates in the order of their relative excellence as determined by examination, without reference to priority of time of examination.

"14—9. Promotions according to merit and seniority.) The board, by its rules, shall provide for promotion in the fire and police departments on the basis of ascertained merit and seniority in service and examination, and shall provide in all cases, where it is practicable, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to examination. All promotions shall be made from the three having the highest rating."

██ When the Board made up its first register or eligible list pursuant to the above law, that list had legal significance. It was the list from which the Board was required to submit names to fill vacancies. The statute (14—9) provides for the submission of three persons highest on the list for each position, and as there were two vacancies, the Board was required to submit four names to the head of the department, from which he would select two men to fill the two positions. If, therefore, the examination as originally held was valid, the only remaining duty of the Board was ministerial, clear, and enforceable by mandamus. People ex rel. Williams v. Errant, 229 Ill. 56; People ex rel. Freeman v. Department of Public Welfare, 368 Ill. 505; People v. Allman, 382 Ill. 156. Cases cited by defendants to the contrary are not relevant. They are cases in which the judgment and discretion of the Civil Service Commission was involved.

 The only question is whether there was an error which the Board could correct. The cases relied upon by the Board are People ex rel. Laist v. Lower, 251 Ill. 527 (1911); People ex rel. Latimer v. Board of Education, 341 Ill. App. 554 (1950); People ex rel. Hurley v. Graber, 405 Ill. 331 (1950). An examination of these cases will reveal the nature of the mistakes which, under the authorities, the Board was permitted to correct. In People ex rel. Laist v. Lower, supra, the petitioner was certified to fill a vacancy as an architect. It was subsequently discovered that he was lacking in the necessary qualifications for the appointment. In People ex rel. Latimer v. Board of Education, supra, after the plaintiff had successfully completed an examination for a position as a teacher, information reached the board of examiners which revealed that the plaintiff was not qualified to teach, and the Board thereupon changed its recommendation. In People ex rel. Hurley v. Graber, supra, the Civil Service Commission had committed an error in applying military credits.

In the instant case it was not a mistake of fact nor a misinterpretation of its rules which the Board attempted to correct by its resolution of January 7, 1956. It was a change of mind with respect to the weight to be given seniority. In People ex rel. Finnegan v. McBride, 226 N. Y. 252, 123 N. E. 374, the court said that a "mere change of mind is insufficient." It would becloud all civil service examinations if a change of mind were permitted after the results of an examination were made known and the discontent of those who had lost out could make itself felt.

Judgment affirmed.

ROBSON, P. J. and McCORMICK, J., concur.