In the Matter of LOCAL 1180, COMMUNICATION WORKERS OF AMERICA, AFL-CIO, et al., Appellants, *v.* SOLOMON HOBERMAN et al., Constituting the City Civil Service Commission of the City of New York, et al., Respondents.

First Department, November 24, 1970.

*A. Bernard King* for appellants.

*Mary P. Bass* of counsel (*Stanley Buchsbaum* with her on the brief; *J. Lee Rankin, Corporation Counsel,* attorney), for respondents.

MACKEN, J. Special Term dismissed the petition in this proceeding brought by appellants to compel re-rating of papers in a promotional examination for the position of Administrative Associate conducted by the Civil Service Commission of the City of New York December 14, 1968. The published notice of the examination stated: '' The written tests * * * may include a section of multiple-choice items using a Bonus Penalty scoring format '' and that a passing rate of 70% would be required. In response to protests by the appellant union, respondent Hoberman wrote: '' Full instructions explaining ' Bonus Penalty Scoring ' will appear on the question booklets.''

Section 1 of the written examination, the only portion here involved, consisted of 70 multiple-choice problems in which the candidate might choose one of five stated answers. The examination booklet contained the following instructions:

'' In marking an answer to an item you can choose from several courses of action. You may make a FULL COMMITMENT, a PARTIAL COMMITMENT, or NO COMMITMENT:

If you make a FULL COMMITMENT and the answer you have
chosen is *right,* you receive — 8 credits
*wrong,* you receive — 0 credits
If you make a PARTIAL COMMITMENT and the answer you have
chosen is *right,* you receive — 6 credits
*wrong,* you receive — 3 credits
If you make NO COMMITMENT, you receive . . . . . . . . . . 4 credits

You may make NO COMMITMENT to any item — do so whenever you believe it is to your advantage to make NO COMMITMENT. Several items have *no one* right answer; — thus, NO COMMITMENT is the best response for some items in the test. * * *

'' As you could make NO COMMITMENT for each problem and as a consequence receive 4 credits for each, you are in effect starting this section of the test with 4 x 70 or 280 credits.

Each *right* FULL COMMITMENT will *increase* this total by 4 credits.

Each *wrong* FULL COMMITMENT will *decrease* this total by 4 credits.

Each *right* PARTIAL COMMITMENT will *increase* this total by 2 credits.

Each wrong PARTIAL COMMITMENT will *decrease* this total by 1 credit.

" Your goal is to take the series of actions that will give you the highest possible total number of credits."

By computation in accordance with the instructions, characterized by respondents as " the normal method of determining the percentage mark ", the maximum number of credits obtainable was 528 of which 370 were required to attain the passing mark of 70%. Without prior notice to the candidates, the following conversion formula was employed in grading the papers:

Percentage Rating $= 25 + (\dfrac{n}{216} \times 75)$. Twenty-five represented a percentage given each candidate on the assumption that on the average, if all answers were made by guess, one out of four would be correct. Instead of 528, the commission chose to consider the highest number of credits actually earned by any contestant, 496, as the maximum attainable number and the factor 216 in the formula represented the maximum number of credits attainable in excess of 280, the number potentially attributable to no commitment answers. (n) was the number of credits in excess of 280 attained by the individual candidate. By use of the formula, less weight was given no commitment answers and correspondingly greater weight to correct committed answers than indicated by the instructions.

In support of their procedure respondents assert that the use of a conversion formula is intrinsic to a " Bonus Penalty scoring format " and that express notice that the format would be used was constructive notice of the use of such a formula. They argue, with probable justification, that by normal scoring attainment of a passing mark was obviously easy and therefore conclude as set forth in their brief: " Under these circumstances no one could reasonably anticipate that the normal method of determining the percentage mark would be applied under a bonus penalty system. The use of such a method would be absurd. The candidates, if they gave the matter any thought, must have expected that a method of determining the percentage mark would be used which would be of the type actually employed by the Civil Service Commission."

We are here concerned with the legality of the commission's procedure and not its wisdom. (*People ex rel. Moriarty* v. *Creelman,* 206 N. Y. 570; *Matter of Cavanagh* v. *Watson,* 201 Misc. 899, affd. 280 App. Div. 757, mot. for lv. to app. den. 304 N. Y. 986.) There being no claim that the number of candidates was insufficient to provide an adequate eligible list or greatly exceeded the number of vacancies, no express authority for using the conversion formula is found in the Rules of the City Civil Service Commission (cf. rule 4.5.1[b] [1] [2]; *Matter of Robbins* v. *Schechter,* 7 Misc 2d 436, affd. 4 N Y 2d 935; *Matter of Hymes* v. *Schechter,* 6 N Y 2d 352). Appellants contend that the commission's use of the fomula violates its rule 4.5.3 which provides in part: '' The required passing rating in any test, subject or part of an examination shall be fixed by the director of examinations at not later than the time of the holding thereof.'' By normal computation, a passing mark of 70% would be attained by a candidate earning 370 credits. By application of the formula, his percentage mark became 57 and to attain a 70% mark 410 credits were required which by normal marking would have resulted in a rating of 78%. Thus, employment of the conversion formula in effect raised the passing rate from 70% to 78%. (*Matter of Hymes* v. *Schechter, supra,* p. 356.) As was said in *Hymes* (p. 357): '' A civil service body may, in accordance with the most modern and scientific methods of rating, adjust the passing mark of an examination provided adequate and informative advance announcement is made. Such body may not, however, lawfully adjust the required passing grade for part of a written examination, unless it notifies the candidates in advance of the examination by duly promulgated rule or otherwise, that such an adjustment may be made, and discloses the method and factors to be used in determining such an adjustment.''

Respondents failed to meet those requirements and the judgment appealed from should be reversed on the law without costs and judgment entered granting petitioners the relief sought in the petition.

EAGER, J. P., CAPOZZOLI, NUNEZ and McNALLY, JJ., concur.

Judgment of the Supreme Court, New York County entered on June 8, 1970, unanimously reversed, on the law, without costs and without disbursements, the application granted and the petition reinstated.