LOCAL 773, AFL-CIO, ET AL. *v.*
CITY OF BRISTOL ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 279390
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed July 28, 1983

1

*William J. Gagne,* for the plaintiffs.

*Sorokin, Sorokin, Hurwitz, Wetstone, Rabinovitz & Gassner,* and *Bristol Corporation Counsel,* for the named defendant et al.

*Sorokin, Sorokin, Hurwitz, Wetstone, Rabinovitz & Gassner* and *R. M. Bourke,* for the defendant Bachand.

SATTER, J. In this action for an injunction and for a declaratory judgment the central issue is whether, when the Bristol city charter requires a 70 percent passing grade on a written civil service examination, the grades can legally be curved, after the examination has been given and the results known, in order to provide a sufficient number of candidates to move on to the oral examination and to be placed on an eligibility list.

The plaintiffs are three city firemen who achieved a raw score of over 70 percent on written examinations before curving and who were appointed to the positions for which the examinations were held, and the union representing employees of the Bristol fire department. The defendants are the city of Bristol, the city officials involved with administering civil service examinations, maintaining eligibility lists and appointing successful candidates to positions in the civil service system, and Joseph T. Bachand, a fireman who did not achieve a 70 percent raw score on a civil service examination but who was deemed to have done so as a result of curving the grades.

The facts, as stipulated by the parties, are as follows: The plaintiff, Local 773, IAFF, AFL-CIO, is a labor organization within the meaning of General Statutes § 7-467 (3) and is the collective bargaining agent for all the uniform and investigatory employees of the Bristol fire department, excluding the chief and deputy

chiefs. The individual plaintiffs are employees of the Bristol fire department and members of the union. The Bristol charter provides that persons within the civil service are promoted as a consequence of competitive written and oral examinations, which "shall be provided and administered under the merit system practices and principles." Pursuant to § 42 (c) of the charter the written examination counts for 50 percent of the overall score, the oral examination for 25 percent and credit for service for 25 percent. Section 42 (d) of the charter provides: "Only those candidates who have obtained a mark of 70% or better on the written examination shall be allowed to take the oral examination." Once an overall score is developed, candidates are placed on an eligibility list in the order of their scores and promotions are made from the list.

The plaintiff Armand Lemieux and nine others took the competitive written examination for the position of deputy chief and only Lemieux had a raw score of 70 percent or better. The next highest score was 59 percent and the average raw score was 53 percent. The city then curved the examination by adding 20 points to everyone's score. On the basis of the scaled scores, seven of the ten candidates, including the defendant Bachand, were deemed to have scored 70 percent or better and moved on to take the oral examination. An eligibility list was prepared with Lemieux placed first on that list and with Bachand second. Lemieux was promoted from the list to deputy fire chief.

The plaintiff Dennis Piere and seven others took the written examination for the position of fire prevention officer and Piere had a raw score of 70 percent or better. The next highest raw score was 68 percent and the average raw score was 66.75 percent. The city curved the examination by adding 7 points to the scores of all examinees and as a result five candidates compiled a score of 70 percent or better. After the oral

examinations, an eligibility list was prepared for the position of fire prevention officer and the plaintiff Piere was appointed to that position.

The plaintiff Melvin McCallum took the written examination for the position of fire prevention inspector. Four persons obtained a raw score of 70 percent or better, with McCallum placing third with a 73 percent. Raw scores were then curved by multiplying each person's raw score by 1.14. Four of the seven candidates withdrew from the competition including three of the candidates whose raw scores were 70 percent or better. An eligibility list was prepared and McCallum was promoted to the position of fire prevention inspector.

The three examinations were curved in order to assure that a sufficient number of qualified candidates would move on to the oral examinations and then to an eligibility list, and at the same time to provide a sufficient spread in the scoring to permit differentiation among individuals. The process which led to the decision to curve and the curve itself was fair, rational and in accord with modern testing techniques. The plaintiffs are seeking to have the names of those applicants who did not achieve raw scores of at least 70 percent on the examinations removed from the job eligibility lists.

Before reaching the merits of the case, the court must deal with the question of standing of the plaintiffs to bring this suit. As to the individual plaintiffs, each of them achieved a raw score of 70 percent or better, each was promoted to the position for which examined and would have been promoted, even if the tests had not been curved. Thus, none has suffered any injury or had any wrong done to him. As a consequence, they have no standing to adjudicate the issues here raised. *Maloney* v. *Pac,* 183 Conn. 313, 320, 439 A.2d 349 (1981); *Alarm Applications Co.* v. *Simsbury Volunteer*

*Fire Co.,* 179 Conn. 541, 546, 427 A.2d 822 (1980); *Shashan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975).

The plaintiff union is an employee organization within the meaning of General Statutes § 7-467 (3), "having as a primary purpose the improvement of wages, hours and other conditions of employment among employees of municipal employers." It is the duly designated representative of a majority of the employees of the Bristol fire department, pursuant to § 7-468 (b), having the right to negotiate collective bargaining agreements for all of the employees who are within the bargaining unit, pursuant to § 7-468 (c) and having the responsibility "for representing the interests of all such employees without discrimination and without regard to employee organization membership."

Our Supreme Court has recognized that standing is "a practical concept designed to ensure that . . . judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." *Maloney* v. *Pac,* supra. Standing exists "when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or *representative* capacity." (Emphasis added.) Id., 321.

The plaintiff union is clearly representing the interests of fire department employees in challenging the legality of curving civil service examinations, and the defendants, by opposing the challenge, create a real controversy.

The defendants, however, point to § 7-474 (g) as specifically denying the right of the plaintiff union to bring this action. That section provides: "The conduct and the grading of merit examinations, the rating of candidates and the establishment of lists from such examinations and the initial appointments from such lists

. . . shall not be subject to collective bargaining . . . ." While the statute precludes those items from being the subjects of collective bargaining, it does not preclude those items from being subjects of a civil action. Thus, that statute is not applicable, and this court concludes that the plaintiff union has standing to initiate and pursue this suit.

The Bristol charter provides that its written and oral examinations "shall be provided and administered under the merit system practices and principles." It further provides that "only those candidates who have obtained a mark of 70% or better on the written examination shall be allowed to take the oral examination." Our law recognizes: "Statutory provisions for civil service examinations must be strictly complied with to support the validity of the action of a municipal board concerned with promotions under civil service." *Walker* v. *Jankura,* 162 Conn. 482, 490, 294 A.2d 536 (1972). Those provisions "are mandatory and must be complied with strictly. They may not be waived by a civil service commission and substantial compliance is insufficient." Id., 489.

The defendant city clearly failed to meet the requirement of strict compliance with the 70 percent passing grade provision of the charter by adding twenty points to the grades of those taking the examination for deputy chief and seven points to the grades of those taking the examination for fire prevention officer, and by multiplying grades by 1.14 for those taking the examination for fire prevention inspector.

Moreover, such practice of curving grades, after an examination has been held and the results made known, is contrary to settled merit system principles. It enables a curving formula to be selected that raises favored persons to a passing level.

In *People ex rel. Gaynor* v. *Board of Fire and Police
Commissioners,* 14 Ill. App. 2d 329, 144 N.E. 2d 763
(1957), the board changed the weight to be given to
seniority after an examination was held. The court
noted that "[t]he good faith of the Board is . . . not
questioned"; id., 330; but held: "It would becloud all
civil service examinations if a change of mind were
permitted after the results of an examination were
made known and the discontent of those who had lost
out could make itself felt." Id., 336.

In *State ex rel. Hearty* v. *Mullin,* 198 Wash. 99, 87
P.2d 280 (1939) the question was whether the civil ser-
vice commission, after first grading and identifying the
applicants, had a right to subsequently regrade on a
different basis. The court held it to be a violation of
the principles of civil service, noting: "If the commission
can do legally what it did in this case, civil service
examinations would be subject to the whim or caprice
of the commission." Id., 104.

In *Matter of Hymes* v. *Schechter,* 6 N.Y.2d 352, 357,
160 N.E.2d 627 (1959) the New York Court of Appeals
held that a civil service body could not apply a conver-
sion formula to adjust the passing grades of a civil ser-
vice examination unless it "notifies the candidates in
advance of the examination by duly promulgated rule
or otherwise, that such an adjustment may be made,
and discloses the method and factors to be used in
determining such an adjustment . . . ." See also
*Matter of Local 1180* v. *Hoberman,* 35 App. Div. 2d 269,
315 N.Y.S.2d 958 (1970); 15A Am. Jur. 2d, Civil Ser-
vice § 45.

Those cases establish merit system principles that
testing procedures not be at the whim of a commission
and that their impartiality remain intact. Those prin-
ciples are here violated when a passing grade for a
written examination is established by charter and the
grades are curved after the examination is given and

8

the results known, without examining authorities having revealed the curving formula before the examination was given. In such instances, the objectivity of the written examination is destroyed and the opportunity for favortism too obvious. The practice of curving without prior notice is not justified by a need to enlarge an eligible list. *Matter of Wittekind* v. *Kern,* 170 Misc. 939, 942, 11 N.Y.S.2d 569 (1938).

As a consequence, this court concludes that an injunction should issue enjoining the city and its officials from using eligibility lists containing the names of individuals who did not score 70 percent or higher on written examinations, before points were added to their grades, and from making any future appointments of those individuals from said eligibility lists.

The plaintiffs also sought a declaratory judgment, pursuant to Practice Book §§ 388 through 394. They have, however, completely failed to comply with Practice Book § 390 (d), which requires notice be given to all parties having an interest in the subject matter of the complaint. As a consequence, this court denies the relief of declaratory judgment.