FRANK SANTORA ET AL. *v.* WILLIAM MIKLUS ET AL.
(12680)
(12681)

PETERS, C. J., HEALEY, SHEA, MENT and A. ARONSON, Js.

Argued January 9—decision released March 18, 1986

*Henry A. Walsh, Jr.,* with whom was *Howard B. Linett,* for the appellants (intervening defendants James J. Honis et al.).

*Beverly J. Hodgson,* with whom, on the brief, was *Rita Lisko,* law student intern, for the appellants (intervening defendants Lawrence Middleton et al.).

*James M. Kearns,* for the appellees (plaintiffs).

*William B. Barnes,* for the appellees (intervening defendants Kenneth Dolan et al.).

PETERS, C. J. The dispositive issue in this appeal is the scope of a trial court's authority to enjoin action taken by a civil service commission to comply with an antidiscrimination order issued by a federal court. In 1983, the civil service commission of the city of Bridgeport, after holding a promotion examination, established a list of officers to fill vacancies in the position of sergeant. The list was limited to the names of those officers who had been eligible for promotion prior to October 31, 1976, except that it contained as well the names of four minority officers who were allowed to compete for promotion by a federal court order even though they had not been eligible for promotion prior to October 31, 1976. After the commission's announce-

ment of the composition of the list, the plaintiffs, police officers who had become eligible for promotion after October 31, 1976, brought suit in the Superior Court, claiming that the presence of the four minority officers on the list constituted reverse discrimination. The trial court agreed and ordered that the commission include on the promotion list officers who had not been eligible for promotion prior to October 31, 1976. The intervening defendants, police officers who had been eligible for promotion to sergeant prior to October 31, 1976, appeal from this judgment.[1] We find error.

This controversy requires us to find an accommodation between state law governing civil service promotions in Bridgeport and federal court rulings arising out of protracted civil rights litigation involving the employment practices of the Bridgeport police department. There is no factual controversy about the source of this conflict between state and federal law.

Under state law, pursuant to an amendment enacted by the state legislature in a special act in 1935, the charter of the city of Bridgeport creates a civil service system providing mandatory procedures for promotions of police department officers to the position of sergeant. 22 Spec. Acts 261, No. 407; *Walker* v. *Jankura*, 162 Conn. 482, 489–90, 294 A.2d 536 (1972). Section 9 of the civil service provisions of Bridgeport's charter,[2]

---

[1] Two of the intervening defendants, Officers Kenneth Dolan and David Jaundrill, characterize themselves as appellees because they ask this court to hold that the Bridgeport police department may not take race into account in promoting officers to the position of sergeant.

[2] "[Civil Service Provisions of Charter of the City of Bridgeport] Section 9. The personnel director shall, from time to time, as conditions warrant, hold tests for the purpose of establishing employment lists for the various positions in the competitive division of the classified service. Such tests shall be public, competitive and open to all persons who may be lawfully appointed to any position within the class for which such examinations are held with limitations specified in the rules of the commission as to residence, age, health, habits, moral character and prerequisite qualifi-

obligates the civil service commission to give periodic promotion examinations for candidates for police sergeancy. To qualify to take an examination, candidates must meet eligibility requirements for the position of

cations to perform the duties of such position, provided applicants shall be citizens of the United States. Promotion tests shall be public, competitive and free only to all persons examined and appointed under or holding an office or position by virtue of section six of this act and who have held a position for one year or more in a class or rank previously declared by the commission to involve the performance of duties which tend to fit the incumbent for the performance of duty in the class or rank for which the promotion test is held. Efficiency and seniority in service shall be considered in connection with tests whenever there shall be an opening in a superior class to be filled. The examination shall be open to those in inferior rank in the same class, the duties of which directly tend to fit the incumbents thereof for the performance of the duties of the superior grade. A person who has served less than one year in a lower grade shall not be eligible for a promotion. If fewer than two persons submit themselves for a promotion test, or if, after such test has been held, all applicants shall fail to attain a general average of not less than the minimum standard fixed by the rules of the commission, said director shall forthwith hold an original entrance test and certify from the employment list resulting therefrom. All tests shall be practical, and shall consist only of subjects which will fairly determine the capacity of the persons examined to perform the duties of the position to which appointment or promotion is to be made, and may include tests of physical fitness or of manual skill. No credit shall be allowed for service rendered under a temporary appointment. No question in any test shall relate to religious or political opinions or affiliations. No questions which are misleading or unfair or in the nature of catch questions shall be asked, nor shall the identity of any applicant be disclosed to the examiner or to the one correcting the applicant's test. As many tests shall be held as may be necessary to provide eligibles for each class of positions and to meet all requisitions and to fill all positions held by temporary appointees. From the return and report of the examiners or from tests by him, the personnel director shall prepare a list of eligibles for each grade of the persons who shall attain such minimum mark as may be fixed for the various parts of such test, and whose general average standing upon the test for such position is not less than the minimum fixed by the rules of the commission, and who may lawfully be appointed. Such persons shall rank upon the list in the order of their relative excellency as determined by the tests without reference to priority of time of tests. The markings of all tests shall be completed, the resulting employment list and the answers to all questions in competitive written examinations posted as soon as possible thereafter and not later than ninety days from the date of the test. The commission shall cancel such portion of any list as has been in force for

sergeant when the examination is held. The commission grades the examinations and creates a promotion list by ranking candidates in the order of their scores on the examination. Those who achieve scores above a designated minimum will be called, in order of rank,

more than two years. The markings and test papers of each candidate shall be open to his inspection. The markings and test papers of all persons upon any list of eligibles may be open to public inspection in the discretion of the civil service commission. An error in the marking of any test, other than the existence of a difference of opinion, if called to the attention of the commission within one month after the posting of an employment list resulting from such tests shall be corrected by it. No certification of appointment shall be made for one month after posting the eligible list. Notice of the time, place and general scope of each test and of the duties, pay and experience advantageous or requisite for all positions in the grade for which the test is to be held shall be given by the personnel director. Such notice shall be by publication, at least once a week for two weeks preceding the test, in a newspaper printed in the English language and having a circulation in the city of Bridgeport of more than five thousand copies of each edition. Such further notice shall be given as the commission may prescribe. All tests for promotions in the teaching service shall be prepared and corrected under the direction of the superintendent of schools, with the approval of the board of education, and he shall, in like manner, determine the prerequisite qualifications for admission to such tests, all in the spirit of this act and solely on the basis of merit. The administration and control of such tests and the results thereof, shall, in all other respects, be subject to all the terms and provisions of this act. The personnel director may from time to time hold promotion tests for any or all positions in the competitive division of the classified service which are allocated to classes which have been or shall be established to be at the promotion level by the civil service commission. When a position in a promotion class shall become vacant, after the passage of this act and no appropriate re-employment list or employment list exists, the personnel director shall, within one hundred and twenty days of the date of the creation of the vacancy, hold a promotion test for such class.

"Within one calendar year from the date of passage of this act, the personnel director shall hold tests for the purpose of establishing employment lists for all classes which are allocated to the non-competitive division of the classified service and for which no re-employment list or employment list exists at the time of the passage of this act. When an employment list for any class in the non-competitive division of the classified service expires, the personnel director, within one hundred and twenty days of the date such employment list expired, [shall] hold examinations for the purpose of establishing an employment list for such class."

to fill police department vacancies in the position of sergeant as they arise; those who fall below the minimum level receive no further consideration for promotion. Under § 9, the department must continue to use the promotion list for two years or until no eligible candidates remain on the list. When a promotion list expires, the commission must hold a new examination within 120 days after the next vacancy arises.

In 1972, black and hispanic Bridgeport police officers, as well as unsuccessful applicants to the department, instituted a federal court class action challenging the constitutionality of the hiring and promoting practices of the Bridgeport police department. The United States District Court, Newman, J., found that the department had been engaging in racial discrimination and ordered a number of remedial measures including the observance of temporary quotas for hiring and promoting blacks and hispanics. *Bridgeport Guardians, Inc.* v. *Members of the Bridgeport Civil Service Commission,* 354 F. Sup. 778 (D. Conn. 1973) (*Guardians I*). On appeal, the Court of Appeals for the Second Circuit upheld the district court's order as it applied to the hiring and recruitment of new officers. *Bridgeport Guardians, Inc.* v. *Members of the Bridgeport Civil Service Commission,* 482 F.2d 1333 (2d Cir. 1973) (*Guardians II*). It held, however, that the District Court erred in imposing quotas for promotion and that any court-ordered remedial alterations of promotion procedures should apply "irrespective of race or ethnic background." Id., 1341. On remand, the District Court, in an attempt to ameliorate institutional impediments to the promotion of the minority group members who had been hired under its original order, directed the department to reduce the eligibility requirements for promotion to sergeant and to deviate from § 9 in determining when to hold a new promotion examination for the office of sergeant. *Bridgeport Guardians, Inc.* v. *Mem-*

*bers of the Bridgeport Civil Service Commission,* 8 Employment Practices Decisions, par. 9508, p. 5274 (D. Conn. 1974) (*Guardians III*). The Court of Appeals for the Second Circuit affirmed the revised order. *Bridgeport Guardians, Inc.* v. *Members of the Bridgeport Civil Service Commission,* 497 F.2d 1113 (2d Cir. 1974) (*Guardians IV*), cert. denied, 421 U.S. 991, 95 S. Ct. 1997, 44 L. Ed. 2d 481 (1975).

In 1976, the sergeant promotion list that had been in force during *Guardians III* expired. The first vacancy after its expiration occurred on July 2, 1976. Thus, the 120 day provision of § 9 required the commission to hold a new examination by October 31, 1976. Claiming a shortage of funds, however, the commission did not hold the examination within the 120 day period. Indeed, it scheduled no examination for more than three years. On November 21, 1979, the commission announced that it would hold a promotion examination for the position of sergeant on January 26, 1980. The announcement stated that only those officers who had been eligible for promotion prior to October 31, 1976, would be allowed to take the examination.[3] This limitation prompted the minority officers who had been hired pursuant to the *Guardians I* order, but who had been otherwise ineligible for promotion prior to October 31, 1976, to move that the *Guardians* District Court clarify the order concerning promotions that it had issued in *Guardians III*. The *Guardians* court, Newman, J., sitting by designation, granted their motion and ordered that the commission allow minority group members to take the examination and to compete for promotions even if they had not been eligible prior to October 31, 1976, provided that, on the date the commission announced the examination, the offi-

---

[3] Officers were eligible for promotion prior to October 31, 1976, if they had served satisfactorily as police officers for one year prior to October 31, 1976.

cers had served the department for at least one year and met other eligibility requirements.[4] Judge Newman's clarification rendered each of the moving officers eligible to take the examination.

Before the commission could hold the announced examination, several officers filed suit in federal court challenging the examination's validity as a job-related selection device and obtained an injunction that forced the commission to cancel the examination. See *Members of the Bridgeport Housing Authority Police* v. *Bridgeport*, 85 F.R.D. 624 (D. Conn. 1980). In May, 1983, after the parties to *Bridgeport Housing Authority Police* had agreed upon an examination format, the commission announced that it would hold a sergeant promotion examination in June, 1983, and that any officer who had been eligible for promotion to the rank of sergeant on January 26, 1980, would be eligible to take the examination. A number of officers who had been eligible for promotion prior to October 31, 1976, immediately filed appeals with the commission demanding that the commission set October 31, 1976, rather than January 26, 1980, as the date of eligibility. The commission denied these appeals, held the examination, and created a new promotion list for the position of sergeant in accordance with its announcement. Upon further protest by the senior officers, however, the commission on November 28, 1983, reconsidered its position and announced that only those officers who had been eligible for promotion on October 31, 1976, and those officers covered by Judge Newman's clarifi-

---

[4] Judge Newman wrote:

"The court hereby clarifies its prior order herein as follows:

"Minority group members hired pursuant to the order of this Court are and shall be considered eligible to take promotional examinations if, as of the date of the announcement of the promotional examination, they have served as police officers for a period of one year. Such persons are and shall be required to fulfill any other valid prerequisites for eligibility to compete for departmental promotions."

cation order would be allowed to compete for vacant sergeant positions. The commission disqualified all other officers from the promotion list.

The officers who had taken the examination and had been disqualified by the commission sought relief in federal court by moving to intervene in the *Guardians* litigation. The District Court in that case, Daly, J., denied their motion on December 13, 1983. They did not appeal the denial of their motion. Instead, on December 15, 1983, they filed the present suit in Connecticut Superior Court, seeking to enjoin the commission from deleting their names from the promotion list. The intervening defendants, candidates whose names remained on the promotion list, successfully moved to intervene in the case.

After a full hearing, the trial court ruled in favor of the plaintiffs. The court enjoined the commission from eliminating the plaintiffs from the promotion list, ordered their promotion on the same basis as all other participants, and prohibited the commission from using race as a criterion for promotion. The court held that the commission had engaged in illegal discrimination by holding the plaintiffs, but not the minority group members, to the requirement of eligibility for promotion on October 31, 1976. The court acknowledged that Judge Newman's clarification order purported to extend only to "[m]inority group members hired pursuant to [*Guardians I*] . . . ." It concluded nonetheless that it should interpret Judge Newman's order in light of the requirement enunciated by the Second Circuit in *Guardians II* "that there be no discrimination as to eligibility which would result in a promotional preference for minority policemen." Adopting this view, the trial court construed Judge Newman's clarification as an order making all police officers, regardless of their race, eligible for the examination and promotion if they had in-grade service of one year as

of the date that the examination was announced. Finding the announcement date of the 1983 examination to be May 2, 1983, it ordered the commission to include the names of the plaintiffs on the promotion list.

On appeal, the intervening defendants claim that the trial court erroneously (1) construed Judge Newman's clarifying order, (2) concluded that the commission had engaged in illegal discrimination, and (3) issued an injunction when money damages would have sufficed to remedy any harm suffered by the plaintiffs. In light of our disposition of this case, we need not specifically address the latter two issues.

Our threshold inquiry concerns the propriety of the trial court's decision to construe, and to enforce its construction of, a federal court order. By including on the promotion list certain minority group members who had not been otherwise eligible for promotion on October 31, 1976, the civil service commission was attempting to comply with a federal court order. The plaintiffs' challenge to the legality of the commission's special treatment of the minority group members constituted, in effect, a collateral attack on the federal court order. The trial court provided a receptive forum for such an attack. In rejecting a literal interpretation of Judge Newman's clarifying order and instead recasting the order to comport with its own interpretation of *Guardians II,* the trial court in effect modified Judge Newman's clarifying order.

Collateral attacks on judgments of courts of coordinate jurisdiction are disfavored in this state. See *Department of Health Services* v. *CHRO,* 198 Conn. 479, 487–89, 503 A.2d 1151 (1986); *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147, 496 A.2d 476 (1985). In the interests of finality and judicial economy, challenges to a court order should be brought to the court that issued the order or to an appellate court of proper

jurisdiction. Because of its familiarity with the facts of the case and the reasons underlying its decision, the court from which an order emanates occupies a preferred position for clarification of the meaning of its language and for adaptation of its order to changed circumstances. See *United States* v. *Fluor Corporation,* 436 F.2d 383 (2d Cir. 1970), cert. denied, 402 U.S. 945, 91 S. Ct. 1623, 29 L. Ed. 2d 114 (1971); *Lapin* v. *Shulton, Inc.,* 333 F.2d 169 (9th Cir.), cert. denied, 379 U.S. 904, 85 S. Ct. 193, 13 L. Ed. 2d 177 (1964); *Coleman* v. *Patterson,* 57 F.R.D. 146, 148–49 (S.D.N.Y. 1972); *James Blackstone Memorial Assn.* v. *Gulf, Mobil & Ohio R. Co.,* 28 F.R.D. 385 (D. Conn. 1961). Principles of comity urge upon state courts the exercise of restraint before they venture into modification and reconstruction of facially valid federal court orders. Only in narrowly defined circumstances are state courts authorized to enjoin parties from pursuing federal court relief and from obeying federal court orders. See *Donovan* v. *Dallas,* 377 U.S. 408, 84 S. Ct. 1579, 12 L. Ed. 2d 409 (1964); *Central National Bank of Boston* v. *Stevens,* 169 U.S. 432, 18 S. Ct. 403, 42 L. Ed. 807 (1898); see also *Deposit Bank* v. *Frankfort,* 191 U.S. 499, 512, 24 S. Ct. 154, 48 L. Ed. 276 (1903); *Aristocrat Health Club of Hartford, Inc.* v. *Chaucer,* 451 F. Sup. 210, 214, 218 (D. Conn. 1978). We therefore hold that, except in the most compelling circumstances, the courts of this state should decline to afford litigants the opportunity to launch collateral attacks on orders issued by federal courts and should refuse to grant relief that would entail interfering with the execution of such orders. See *Jamaica Hospital* v. *Blum,* 68 App. Div. 2d 1, 416 N.Y.S.2d 294 (1979); *Banco Do Brasil* v. *Madison Steamship Corporation,* 61 Misc. 2d 1028, 1030–32, 307 N.Y.S.2d 341 (N.Y. Sup. Ct. 1970); *Wolgin* v. *State Mutual Investors,* 265 Pa. Super. 525,

532–34, 402 A.2d 669 (1979); see also *Reserve Mining Co.* v. *Minnesota Pollution Control Agency,* 267 N.W.2d 720, 725 (Minn. 1978).

In this case, if the plaintiffs wished to question the meaning of Judge Newman's clarifying order, the propriety of the civil service commission's compliance with the order, the applicability of the order to new circumstances, or the legality of the order itself, the appropriate forum for their pursuit of these complaints was the Federal District Court that continued to retain jurisdiction over the *Guardians* litigation. See *Guardians I,* supra, 800. That forum was not definitively foreclosed to them by the District Court's denial of their motion to intervene in that litigation, since they elected not to appeal that denial to the Court of Appeals for the Second Circuit. Where a federal court that has issued an order denies a prospective intervenor's motion to enter the case to challenge the validity or application of that order, we will not allow the unsuccessful intervenor to mount such a challenge in our courts. See *Gregory* v. *County of LaSalle,* 40 Ill. 2d 417, 422, 240 N.E.2d 609 (1968).

The trial court was therefore in error in its conclusion that the plaintiffs had been denied their constitutional rights to equal protection by the commission's decision to comply with Judge Newman's order in determining the class of officers eligible to take the promotion examination. As an alternate basis for upholding the trial court's judgment, the plaintiffs urge us to hold that the commission acted arbitrarily and capriciously in its selection of an eligibility date and in its belated reversal of its ruling on eligibility standards. This argument is not premised on racial discrimination, but evidences instead a dispute between senior and junior members of the Bridgeport police department. We

find nothing in the record to support the plaintiff's characterization of the commission's actions.[5]

The commission's decision to exclude officers who had not been eligible for promotion prior to October 31, 1976, represented an attempt by the commission to satisfy Judge Newman's clarification order in light of the requirements of Bridgeport civil service law. Had the examination been held in 1976 as required by law, the eligibility date would have been October 31, 1976. Had the examination been held in 1980 as contemplated by Judge Newman's clarification order, the eligibility date would have been October 31, 1976. Thus, in setting October 31, 1976, as the date of eligibility for the 1983 examination, the commission could reasonably have been trying to recreate the circumstances that had prevailed at the times that the examination should have been held.[6]

Similarly, the commission did not act improperly in reestablishing the 1976 eligibility date after it had already held the test and announced the results using an eligibility date of January 26, 1980. The record indicates that the commission originally chose the 1980 eligibility date because it assumed that Judge Newman's clarification order so required. After considering the matter further, the commission apparently

---

[5] The plaintiffs had a full opportunity to present relevant evidence to the trial court but did not directly avail themselves of the opportunity to pursue this argument. Consequently, the trial court did not expressly rule on this issue. The plaintiffs introduced testimony suggesting that other options were available to the commission. They did not offer evidence showing that the commission's decision was arbitrary or capricious. Although the plaintiffs raised this issue in their amended complaint, their argument at trial focused on the discriminatory nature of the commission's action.

[6] Since the plaintiffs do not accuse the commission of intentionally postponing the examination in order to favor certain candidates for promotion, they cannot claim that the delay in holding the examination constituted a violation of our holding in *Walker* v. *Jankura,* 162 Conn. 482, 294 A.2d 536 (1972).

determined that Judge Newman's order and pertinent civil service statutes required that it establish October 31, 1976, as the date of eligibility.

The plaintiffs claim that civil service commissions may not alter eligibility rules for a promotion examination after the commission knows the results of the examination. The cases cited by the plaintiff in support of this proposition deal with alterations instituted by civil service commissions that were discretionary in nature. See *Local 773* v. *Bristol,* 39 Conn. Sup. 1, 6–8, 463 A.2d 628 (1983); *People ex rel. Gaynor* v. *Board of Fire Commissioners,* 14 Ill. App. 2d 329, 144 N.E.2d 763 (1957). In this case, where the commission was attempting to amend its previous decision to comport with its interpretation of a mandatory court order, its selection of a new eligibility date after the examination had taken place was permissible. See *People ex rel. Gaynor* v. *Board of Fire Commissioners,* supra, 336 (distinguishing between the commission's attempt to correct a misinterpretation of law or fact and its attempt to implement new policy); *State ex rel. Dunn* v. *Elliott,* 6 Wash. 2d 426, 432–34, 107 P.2d 915 (1940). The plaintiffs presented no evidence at trial indicating that bad faith motivated the commission's alteration of the eligibility date. They do not contend that they relied to their detriment upon the commission's establishment of the original eligibility date. In light of these circumstances, we cannot conclude that the commission acted arbitrarily and capriciously in changing the eligibility date to October 31, 1976.

Because the trial court's injunction interfered with the civil service commission's attempted compliance with Judge Newman's clarifying order, we vacate the trial court's order. The commission may proceed with its efforts to satisfy the federal decree.[7] Any further

---

[7] After the trial court issued its injunction, a group of intervening defendants moved that the court stay the operation of its injunction pending their

attempts by the plaintiffs to challenge the commission's implementation of the order must be made in the proper forum.

There is error, and the judgment of the trial court is vacated.

In this opinion the other judges concurred.

appeal. The court granted the motion and, immediately thereafter, vacated the stay. The commission then filled vacancies in the position of sergeant using the promotion list that included the plaintiffs as ordered by the court. The intervening defendants argue on appeal that the trial court erred in vacating the stay. In light of the discretion accorded trial courts in granting or vacating such stays, we cannot conclude that the trial court's actions constituted error. General Statutes § 52-478 permits the court to remove the stay of a permanent injunction while a case is on appeal "if in its opinion the cause of justice so requires . . . ." See *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 7, 469 A.2d 778 (1984). At the time that the trial court issued its order in this case, sergeant promotions had been delayed for over eight years. Even the civil service commission, the party enjoined by the court's order, filed an objection to the motion for an order to stay the injunction. Consequently, we cannot label clearly erroneous the trial court's finding that the cause of justice required that the injunction take effect immediately. We point out, however, that our decision invalidates the promotions made pursuant to the trial court's order.