[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Civil Service Commission of the City of Bridgeport conducted a promotional exam for the position of Sargeant on July 26 and 27, 2000, at the Bridgeport Holiday Inn. The exam included four separate exercises, two each day. On July 26, 2000, the day in question, the first phase or exercise was designated as "Role Play" and the second phase "In Basket Preparation and Orals."
One hundred and fifty-two candidates appeared for the exam. To accommodate the large number, groups of approximately twenty (20) candidates were selected on an alphabetical basis beginning with the letter "A" to take the first phase of the exam. Many of the people administering the exam were involved in both the morning and afternoon sessions and therefore it was necessary to process all nine groups through the first section before the first group could begin the second section. That would necessitate that the first group and subsequent groups would have to wait for one and half to two hours before beginning the second exercise. They waited in a holding room that was established in a portion of the ballroom at the hotel.
The examination was administered by John Colligan, the Personnel Director for the City. He has held that position for several years. He described the evolution of these exams and emphasized his commitment to make them as fair as possible and to avoid any appearances of unfairness.
The procedure for the exam was as follows. Each candidate for the exam was previously sent a letter telling him or her where and when to report for the exam and to bring food or reading materials with them because there would be delays. That letter (defendant's exhibit C) emphasized that to insure the integrity of the exam there should be no communication between candidates who arrive early and those who have later appointments. Upon arrival at the hotel, candidates would sign in on a CT Page 7073 sheet after reading the rules for the examination at the top of the sign-in sheet. Thereafter, they were assigned a number which was the only identification they had. The plaintiff, Brett Hyman, was assigned number 55 and was placed in the fourth group of the nine groups to be examined. Candidates were told that they could either leave their personal belongings in the ballroom or take them upstairs to the examining rooms. Each candidate was given another written set of rules called "Overview For Candidates" while in the sign-in room, which, among other things, prohibited them from communicating with any candidate who had not finished the examination. The plaintiff admitted that he was fully aware of that rule.
The plaintiff apparently completed the first exercise of the exam without incident, then returned to the waiting room in the ballroom and retrieved his personal belongings. He testified that he waited for one to one and a half hours in the ballroom before going upstairs for the second exercise. He was aware of the purpose for the waiting room which was to provide a place to wait until the first phase of the exam was completed and the groups would then, in alphabetical order, proceed upstairs for the second section.
The plaintiff did in fact go upstairs and complete the second section of the exam. Upon completion, his number tag was turned in and he was told he was free to leave. He returned downstairs to the ballroom to retrieve his personal belongings. As he approached the door to the ballroom, he was approached by an Officer Rosa. The plaintiff testified that he had not seen Rosa in two to three years and could not have provided his name but would recall it if he was provided it.
The plaintiff admitted to a short one and a half to two minute conversation with Rosa. He said Rosa did not have his number identification on his clothing so he assumed that Rosa had also completed the second section of the exam. He described their conversation. He denied, as did Rosa, that there was any discussion of the second phase of the examination. The plaintiff generally admitted that they discussed preparation for the exam but not the exam itself. During that process, he became aware that Rosa had not in fact taken the second part of the exam and their conversation terminated.
Apparently their conversation was observed by other candidates in the waiting room and one of them approached Mr. Colligan that afternoon and told him of the conversation. He was told to put it in writing. Over the next few days, three more complaints were filed in writing against the plaintiff and Rosa because of their conversation. On the day following the exam, the plaintiff went to see Colligan, told him about the conversation and gave him the name of witnesses to the conversation. CT Page 7074
Mr. Colligan, pursuant to his duties, conducted an investigation of the incident. He interviewed a total of 24 witnesses including the plaintiff and Rosa. His investigation concluded that (1) there clearly was a conversation between the plaintiff and Rosa; (2) other than for the versions given by the plaintiff and Rosa, no one else heard the content of the conversation; and (3) therefore, there was no way to determine if the conversation benefitted anyone taking the balance of the exam. Mr. Colligan concluded that there had been a prohibited conversation between a candidate who had completed the exam for the day and one who had not begun the second exercise at all, that the conversation lasted from between one and a half to two minutes as the plaintiff claimed, five to six minutes as Rosa recalled or twenty minutes as another officer stated based on his timing of the conversation. He further found that the plaintiff was well aware of the rules that he could have no conversation with anyone who had not completed the second phase of the exam and that he was aware that the waiting room was provided for those who had not finished the exam because he had spent one to one and a half hours in that very room waiting to take the second section. Mr. Colligan, as a result of his investigation, disqualified both the plaintiff and Rosa. He advised the plaintiff of his appeal rights to the Civil Service Commission. The plaintiff placed fourteenth in the exam and would probably have been promoted to that rank by now. Number fourteen on the list was promoted to Sargent on July 25, 2001.
The plaintiff filed an appeal to the Civil Service Commission which Commission dismissed or denied his appeal. He immediately filed this lawsuit. In his complaint he claimed that Mr. Colligan in a 1997 exam had excused a much more serious breach of the rules in the earlier Sargeant's exam. In reviewing the facts of that case, there are clear and obvious differences to this case, and the court concludes that the 1997 incident was not a more serious case than this one and the conclusion in not disqualifying the candidate was rational and well within the Director's discretion.
The instant complaint goes on to fault the nature of Mr. Colligan's investigation and concludes that the Civil Service Commission, despite the investigation's many defects, arbitrarily and irrationally ignored the facts and the law in denying the plaintiff' s appeal.
The parties agree that injunctive relief as sought by the plaintiff is an appropriate remedy for unreasonable, arbitrary, capricious or illegal actions by the Bridgeport Civil Service Commission. See Santora v.Miklus, 199 Conn. 179 (1986); Bruno v. Civil Service Commission,192 Conn. 335 (1983); Winthal v. Fabrizi, 26 Conn. App. 45 (1991) and other cases cited in the plaintiff's Memorandum of Law. The Connecticut CT Page 7075 Supreme Court used the "unreasonable, arbitrary, capricious and illegal" standard in Murchison v. Civil Service Commission, 234 Conn. 35 (1995) to review a police promotional decision by the Waterbury Civil Service Commission. That is the only basis for reversal of a decision of such an administrative agency.
The court finds that there is no evidence to support the claim that either Mr. Colligan or the Commission acted unreasonably, arbitrarily, capriciously or illegally. Mr. Colligan interviewed all the witnesses (24) that had any information. The plaintiff was well aware that he was not to communicate with anyone who had not finished the exam. There was a conversation with Rosa when Rosa had not finished or even begun the second session. The plaintiff knew or should have known from his own experience that people in the waiting room were in fact waiting to be taken upstairs to complete the second session. of greatest significance is that four fellow police officers were so aware of the breach of the rules that they filed written complaints against the plaintiff and pursued those complaints before Mr. Colligan's investigation and indirectly the appeal to the Civil Service Commission. The plaintiff's only response is that he did not know Rosa had not completed the exam when he initially engaged him in conversation.
Mr. Colligan and the Commission are charged with conducting fair and just promotional examinations. They must assure each candidate that the rules will be observed and no appearance of impropriety will be tolerated. They made the rules completely clear, and the plaintiff himself does not contest that.
The plaintiff has completely failed to carry his burden of proof and judgment for the defendant will enter.
GORMLEY, J.