NEW HAVEN FIREBIRD SOCIETY ET AL. *v.* THE
BOARD OF FIRE COMMISSIONERS OF THE
CITY OF NEW HAVEN ET AL.
(11505)

O'CONNELL, HEIMAN and FREEDMAN, Js.

Argued June 9—decision released August 17, 1993

*W. Paul Flynn,* with whom were *Lawrence S. Dressler* and, on the brief, *Howard A. Lawrence,* for the appellant (defendant Local 825, International Association of Firefighters).

*Joseph D. Garrison,* with whom, on the brief, was *Robert A. Richardson,* for the appellees (plaintiffs).

O'CONNELL, J. This is an appeal from the judgment of the trial court granting the plaintiffs' application for a declaratory judgment and injunctive relief. The plain-

tiffs are the New Haven Firebird Society, an organization of African-American and Hispanic fire department personnel, and seven of its individual members who are New Haven fire fighters. The original defendants were the city of New Haven, the New Haven board of fire commissioners, the New Haven board of finance, five individual fire commissioners, a former New Haven fire chief and a former New Haven mayor. In addition, Firefighters for Fairness and Equality, Inc., a group comprised of fire fighters whose promotions were at risk, and Local 825 of the International Association of Firefighters, AFL-CIO (union) intervened as defendants.[1] The union is the only defendant to appeal.

This case originally came before the trial court in the fall of 1989. On December 21, 1989, the court, *Fracasse, J.*, granted the defendants' motion for dismissal for failure to make out a prima facie case. Practice Book § 302. The trial court ruled that equitable relief was not warranted because the plaintiffs had an adequate remedy at law through a quo warranto or mandamus action. The Supreme Court disagreed and remanded the case for a determination on the merits. *New Haven Firebird Society* v. *Board of Fire Commissioners,* 219 Conn. 432, 593 A.2d 1383 (1991). On remand, the case was heard in full by the trial court, *W. Sullivan, J.*

The union claims that the trial court (1) improperly failed to find legal justification for making "promotions subject to assignment" and (2) lacked a legal basis for the declaratory and injunctive relief that it granted. We affirm the judgment.

Promotions to officer positions in the New Haven fire department are made from eligibility lists, prepared by the city's civil service commission after competitive examination. Persons to be promoted are selected from

---

[1] The individual plaintiffs are also members of the defendant union.

among the top three eligible individuals. New Haven Charter, art. XII, § 191. The fire chief is charged with assigning all members of the department to duty. New Haven Charter, art. XXI, § 3.

This case arose out of the practice of the board of fire commissioners making promotions "subject to assignment." This practice, also known as "stockpiling," consists of promoting individuals to positions that are not yet vacant just prior to expiration of a promotion eligibility list. The individuals so promoted would not receive the pay or perform the duties of the higher position until a vacancy in fact occurred and the individual was assigned by the fire chief to fill the vacancy.

Rule IV, § 1, of the New Haven civil service rules requires the civil service board to prepare a list of eligible candidates for promotion. Rule VI provides that the board of fire commissioners may request that the civil service board furnish it with an eligibility list whenever a vacancy occurs or is anticipated. A vacancy is defined as a position existing or newly created that is not occupied and for which funds are available. Rule IV, § 2, provides that an eligibility list shall be in effect from the date it is promulgated and § 3 provides that such list shall be in effect for a period of not less than one year nor more than two years from the date of promulgation.

Specifically at issue are three eligibility lists involving promotions to lieutenant, captain and battalion chief, respectively. The plaintiffs allege and the union admits that the lieutenant and battalion chief lists expired on March 31, 1988, and the captain's list expired on December 29, 1989. Notwithstanding the expiration of the list, the union maintains that promotions made subject to assignment before the expiration of the lists were valid.[2]

---

[2] The plaintiffs recognize that, in theory, *some* promotions made after a list has expired may be valid. This narrow exception, which does not apply

The trial court rendered a declaratory judgment that all promotions from the lists, for which no vacancy existed on the expiration date, were null and void. In addition, the trial court enjoined the defendants from promoting any individuals from the expired lists.

The seminal case concerning the significance of the expiration of promotion eligibility lists is *State ex rel. Chernesky* v. *Civil Service Commission,* 141 Conn. 465, 106 A.2d 713 (1954). "One who could demonstrate his ability [at a specific time] to perform the duties of an office higher than that he then held, might, for a wide variety of reasons, be incompetent to do so a few years later. A limitation upon the time during which an eligibility list remains effective is in the public interest. That interest is fostered by requiring those remaining upon a list to resubmit themselves after a lapse of time to demonstrate anew their fitness for . . . promotional appointment. For the foregoing reasons, a limitation on the life of an eligibility list represents a well-established policy of the merit system." Id., 469–70. In the present case, the practice of making promotions subject to assignment extends the two year limitation period indefinitely. This violates the principle enunciated in *Chernesky* that a person does not acquire permanency of eligibility on a promotion list merely because he once passed an examination. Id., 469.

Nevertheless, the union argues that because the board of fire commissioners has consistently interpreted the local charter and civil service rules to allow promotions subject to assignment, we must give deference to this interpretation. The union relies on the legal principle that requires courts to accord deference to the construction of a statute by the administrative

in the present case, occurs when a selection for promotion is made for an existing vacancy. Before the promotion is actually made, however, the list expires because of the short delay caused by the paperwork involved in the process.

agency charged with its enforcement.[3] *Local 1186* v. *Board of Education,* 182 Conn. 93, 105, 438 A.2d 12 (1980). This rule of deference, however, does not apply to the construction of a statute on an issue that has not previously been subjected to judicial scrutiny. *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 210 Conn. 349, 357, 554 A.2d 1089 (1989); *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities,* 204 Conn. 287, 295, 528 A.2d 352 (1987). In such instances, the construction of the statute is a question of law for the court. *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987). The issue of stockpiling promotions has not previously been the subject of judicial scrutiny and, therefore, special deference to the interpretation of the board of fire commissioners is not warranted in this case. Moreover, where the judicial interpretation of a rule conflicts with the administrative interpretation, the judicial interpretation prevails. *United States* v. *Was,* 684 F. Sup. 350, 352 (D. Conn. 1988), aff'd, 869 F.2d 34 (2d Cir.), cert. denied, 490 U.S. 1068, 109 S. Ct. 2071, 104 L. Ed. 2d 636 (1989).

No member of the board of fire commissioners testified concerning any rationale or purpose for stockpiling. The testimony was only that it was a practice that has been followed by the board for a very long time. At trial, no attempt was made to reconcile the practice with the New Haven charter or civil service rules. "In the circumstances before us, the historical record cannot override the mandates of the charter. We cannot speculate as to why the board acquiesced for so many

---

[3] The principles of statutory construction apply to municipal charters. *Buonanno* v. *Merly,* 4 Conn. App. 148, 149, 493 A.2d 245 (1985). They also apply to civil service rules and regulations; see *Jones* v. *Civil Service Commission,* 175 Conn. 504, 508–509, 400 A.2d 721 (1978); which have the force and effect of law. *Gilbert* v. *Civil Service Commission,* 158 Conn. 578, 582, 265 A.2d 67 (1969).

years in the [stockpiling practice]." *Local 1186* v. *Board of Education,* supra. An agency's interpretation of a rule that clearly violates the rule's intent cannot become legal merely by the passage of time. Consequently, the union's contention that the practice must be recognized because it has gone unchallenged for a long time is unpersuasive.

The union next reasons that because it can be expected that every position will eventually become vacant, stockpiling is in fact making promotions to fill expected vacancies. We agree that every lieutenant, captain or battalion chief will one day retire, resign, be promoted, die, be removed from his position or otherwise vacate it. Although these officers do not hold their positions for eternity, we do not agree that such an indefinite possibility of a future vacancy is a reasonable interpretation of the New Haven civil service rules. It is axiomatic that courts will not construe statutes, ordinances or regulations to achieve an absurd or irrational result. See *Turner* v. *Turner,* 219 Conn. 703, 712–13, 595 A.2d 297 (1991).

At oral argument before this court, the union also urged us to confirm the stockpiling process because requiring a new examination following the expiration of two year eligibility lists would impose an unnecessary financial burden on the city. We do not consider this argument for a number of reasons. First, the union did not set forth this argument in its brief. See *State* v. *Marra,* 222 Conn. 506, 536 n.16, 610 A.2d 1113 (1992); *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.,* 218 Conn. 297, 300, 589 A.2d 337 (1991). Second, in any event, the expense of complying with the city's own rules is not an excuse for noncompliance. See, e.g., *Derby* v. *Water Resources Commission,* 148 Conn. 584, 590, 172 A.2d 907 (1961). Finally, we note that the defendants, presumably most interested in the financial impact of this judgment on the municipality, did not appeal.

Our conclusion is forged by the deeply rooted policies that support civil service examinations. "We have long recognized the purpose and importance of such examinations." *Cassella* v. *Civil Service Commission,* 202 Conn. 28, 34, 519 A.2d 67 (1987). They " 'secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination.' " Id., quoting *Ziomek* v. *Bartimole,* 156 Conn. 604, 610, 244 A.2d 380 (1968).

"The civil service law provides for promotion in governmental employment according to merit and fitness ascertained by competitive examination. . . . The primary purpose of these laws is to guarantee that the meritorious secure jobs and to free public employees from the fear of personal and political reprisal. . . . These examinations not only protect the employees but also benefit the general public in that they tend to eradicate corruption as well as ensure that the persons with the necessary qualifications to discharge intelligently their duties pertaining to public office will do so." (Citations omitted.) *Cassella* v. *Civil Service Commission,* supra, 34–35.

"It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil service system is built. Any violation of the law enacted for preserving this system, therefore, ' "is fatal because it weakens the system of competitive selection which is the basis of civil service legislation." ' *Ziomek* v. *Bartimole,* supra, quoting *Civil Service Board* v. *Warren,* 74 Ariz. 88, 91, 244 P.2d 1157 (1952). Strict compliance is necessarily required to

uphold the sanctity of the merit system . . . ." (Citations omitted.) *Cassella* v. *Civil Service Commission,* supra, 35.

Accordingly, the trial court properly determined that the practice of promoting subject to assignment was illegal.

The union next argues that even if the civil service rules were violated, the trial court improperly issued a declaratory judgment. Practice Book § 389 provides in pertinent part that a court will "render declaratory judgments as to the existence or nonexistence (a) of any right, power, privilege or immunity . . . ." Practice Book § 390 adds that "[t]he court will not render declaratory judgments upon the complaint of any person . . . (a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or (b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties . . . ." The union, in an apparent but unarticulated challenge to the plaintiffs' standing, maintains that the plaintiffs offered no proof that they were improperly denied the right to an examination or that it was unfairly or unlawfully administered. The union further contends that there is no right to the examination process unless and until it is called.

"The question of standing [to pursue a declaratory judgment] is essentially one of aggrievement." *Munhall* v. *Inland Wetlands Commission,* 221 Conn. 46, 54, 602 A.2d 566 (1992). Whether the plaintiffs have been aggrieved is an issue of fact for the trial court to determine. Id., 50; *Hickey* v. *New London,* 153 Conn. 35, 38, 213 A.2d 308 (1965). The trial court found that the plaintiffs were entitled to the legal and equitable inter-

est of seeking a promotion through examination and that the practice of stockpiling endangered that interest. Our review of the record satisfies us that the subordinate facts support the trial court's finding that the plaintiffs satisfied the requirements of Practice Book §§ 389 and 390.

Similarly, the union also claims that the trial court improperly issued an injunction because "there was no right [of the plaintiffs] that was damaged or threatened to be damaged at the time the board of fire commissioners acted." The party seeking injunctive relief must allege and prove irreparable harm and lack of an adequate remedy at law. *Pet* v. *Department of Health Services,* 207 Conn. 346, 370, 542 A.2d 672 (1988). The issuance of injunctive relief is within the discretion of the trial court. Id.

The trial court expressly found that the plaintiffs "have no adequate remedy at law and that they will suffer irreparable harm if an injunction does not issue." The trial court did so because it agreed with the plaintiffs' contention that they were deprived of the opportunity of seeking promotion as long as the illegal stockpiled lists remained in effect. Accordingly, the court did not abuse its discretion in permanently enjoining the defendants from promoting individuals from these illegal lists.

The judgment is affirmed.

In this opinion the other judges concurred.