[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, which was tried to the court, the plaintiff, International Association of Firefighters, Local 834, (union) is seeking to enforce certain civil service provisions of the Bridgeport City Charter. The defendants in this action are the Bridgeport Civil Service Commission (commission); individual members of the civil service commission; John Colligan, who is the acting personnel director for the city of Bridgeport; and various members of the Bridgeport fire department, including David Schiller. The union objects to the scheduling of the promotional examination for the position of Fire Assistant Chief Engineer and to the qualifications of the persons permitted to take that examination. The court finds the following facts.
On March 22, 1993, the union filed a two count[1] complaint against the defendants. Count one alleges that the commission arbitrarily changed the requirements for participation in the examination process and that the commission violated the civil service provision of the Bridgeport City Charter. The union seeks declaratory, injunctive and legal relief.
The charter of the city of Bridgeport establishes a civil service system. See Walker v. Jankura, 162 Conn. 482, 484,294 A.2d 536 (1972). In administering this system, the city's civil service commission has classified positions in the fire department in the competitive division of the classified service. The position of Fire Assistant Chief Engineer, which is the CT Page 1438 subject of this litigation, is within the competitive division.
Section 9 of the Bridgeport Charter explains how promotions are to be made.[2] The commission had previously declared that candidates for the position of Fire Assistant Chief Engineer must have first occupied the position of Fire Captain within the Bridgeport Fire Department for three or more years. The parties dispute how section 9 is to be applied to the facts of this case.
The union is an employee organization under General Statutes § 7-467[3] and is the exclusive representative of all employees of the Bridgeport Fire Department. Pursuant to General Statutes § 7-468,[4] the union can negotiate agreements for all fire department employees, except the Fire Chief.[5]
Because rulings in previous litigation prevented Bridgeport from promoting people to Fire Captain, the position below Fire Assistant Chief Engineer, the Bridgeport fire department lacked people who met the established three year time in grade requirement. Beginning in October, 1986, vacancies for Fire Assistant Chief Engineer were not filled. On May 16, 1991, the president of the union and Bridgeport's Director of Labor Relations made an agreement that reduced the time in grade requirement to only one year.[6]
After this reduction, Bridgeport fire department employees were not qualified to fill vacancies that arose on July 8, 1991, and July 21, 1991. No promotional examination was given to fill these vacancies.
On January 19, 1992, nineteen members of the Bridgeport fire department fulfilled the time in grade requirement. No test was given between that date and May 18, 1992, which is one hundred twenty days later.
Two more vacancies occurred on June 27, 1992, and June 29, 1992. No examination was given in association with either of those dates.
On February 25, 1993, the commission sent out a notice that an examination for Fire Assistant Chief Engineer would be held on March 23, 1993; March 25, 1993; and March 26, 1993. An examination was held on those dates. The commission determined that any employee who had been employed as a Bridgeport Fire Captain for one year before the date of the examination
CT Page 1439 met the time in grade requirement.
The union objects to this determination. The union contends that by extending the deadline for which the time in grade requirement can be met, the commission has allowed too many people to become qualified to sit for the Fire Assistant Chief Engineer's examination.
This case raises three issues: whether the union has standing to bring this action; whether the commission violated General Statutes § 7-474(g) or the provisions of the Bridgeport City Charter; and, if so, what is the appropriate remedy.
 I
Schiller argues that the union lacks standing to maintain this action. Connecticut has adopted the federal standard for representational standing as delineated by the United States Supreme court in Hunt v. Washington State Apple AdvertisingCommission, 432 U.S. 333, 97 S.Ct. 2434, 2441,53 L.Ed.2d 383 (1977). See Connecticut Business Industry Assn., Inc.v. CHHC, 218 Conn. 335, 345, 589 A.2d 356 (1991), and cases cited therein. In Hunt the United States Supreme Court held that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v.Washington State Apple Advertising Commission, supra,432 U.S. 343. Schiller contends that the union fails the second prong of the Hunt test.
Schiller asserts that the facts that have been brought out during trial support his argument. These factual arguments can be summarized under two headings (1) that a pattern of past practice shows the union consented to how the commission acted and (2) that the union is not qualified to bring the suit because the membership does not agree with the decision to bring the suit and the suit will benefit the union's president, Captain Patrick J. Shevlin, in his individual capacity.
The union responds that it does have standing. First, the union contends that the issue of standing was litigated in a pretrial motion to dismiss and that this court cannot change the CT Page 1440 law of the case. Second, the union argues that it has standing as an organization that is asserting an associational injury.
"A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . This principle has been frequently applied to an earlier ruling during the pleading stage of a case such as that upon the motion to strike." (Citation omitted; internal quotation marks omitted.) Breen v. Phelps, 186 Conn. 86, 98,436 A.2d 1066 (1982).
"The parties cannot waive a showing that the plaintiff has standing because, in the absence of standing, the court lacks subject matter jurisdiction to determine the merits of the case."Sadloski v. Manchester, 228 Conn. 79, 83, 634 A.2d 888
(1993). "A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised. The parties cannot confer-subject matter jurisdiction on the court, either by waiver or by consent." Id., 84. Because standing is essential to this court's subject matter jurisdiction, this court will decide whether the plaintiff has standing, despite the court's pretrial ruling that the union has standing.
"[A]n organization has standing to sue in its own right if the associational ties of its members are injured. Warth v.Seldin, 422 U.S. 490, 510-11, 95 S.Ct. 2197, 45 L.Ed.2d 343
(1975)" Paucatuck Eastern Pequot Indians v. Indian AffairsCouncil, supra, 18 Conn. App. 9. An associational injury differs from a representational injury, to which theHunt test applies. Id.
The union alleges that if it cannot prevent the commission from violating the statute or city charter or collective bargaining agreement, it will suffer an injury. The union will be harmed because the members will consider it ineffectual. Damage to the strength and credibility of a union is irreparable injury for which an injunction can issue. Local 818 of Council 4,AFSCME, AFL-CIO v. Town of East Haven, 42 Conn. Sup. 227,238, 614 A.2d 1260 (1992). Therefore, the union has standing to bring the suit.
II
CT Page 1441
The union contends that the commission violated General Statutes § 7-474(g)[7] and the Bridgeport city charter. The defendants respond that the commission did not violate these obligations when it scheduled the examinations on March 23, 1993; March 25, 1993; and March 26, 1993.
The union contends that after the promotional process had been established, the commission was obligated to negotiate any changes in that process with the union. The union urges that the commission's decision to schedule a test in March, 1993, is a unilateral change that was not bargained. In response, the commission argues that it could not comply initially with the May 16, 1991 agreement and when it was possible to follow the agreement, the commission did so.
The court is unable to determine whether the commission violated General Statutes § 7-474(g). That statute requires a city to bargain for changes in the requirements for a promotion. The court cannot determine whether the city changed the requirements because the parties have not provided the court with any evidence about the content of the prior Collective Bargaining Agreement. See footnote 5, supra. The burden of proof on this issue is on the plaintiff even though this is a declaratory judgment action. Scott v. General Iron Weldingco., 171 Conn. 132, 139, 368 A.2d 111 (1976), and cases cited therein. However, the court need not resolve this muddled issue because of its resolution of the second claim.
The union asserts a second basis for its contention: that the commission has violated the Bridgeport city charter. Although the union concedes that when the first vacancy occurred there were not enough eligible candidates, the union argues that the commission should have scheduled an examination after the first group of candidates were eligible, on January 19, 1992.
The commission argues that the one hundred twenty day requirement does not apply because there did not exist a qualified pool of candidates when the first vacancy occurred. The commission's second argument is that it did not have to comply with the city charter because if it scheduled the examination when the city charter provided, it would have had to open the examination to people who were not Bridgeport employees.
"It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil CT Page 1442 service system is built. Any violation of the law enacted for preserving this system, therefore, is fatal because it weakens the system of competitive selection which is the basis of civil service legislation. . . . Strict compliance is necessarily required to uphold the sanctity of the merit system."Cassella v. Civil Service Commission, 202 Conn. 28, 35,520 A.2d 155 (1987) (rejecting a good faith exception to strict compliance); see also New Haven Firebird Society v. Board ofFire Commissioners, 32 Conn. App. 585, 592, 630 A.2d 131
(1993) (rejecting a long standing practice that conflicted with the civil service provision).
The commission did not violate the city charter when it did not schedule examinations to fill the vacancies that occurred on July 8, 1991, and July 21, 1991. A requirement for eligibility is that the candidate must have worked for at least one year as a Bridgeport Fire Captain. It is undisputed that no one was qualified. Bridgeport does not have to schedule an examination for a position that no one can fill.[8] "The law . . . does not require the performance of a useless and futile act." ConnecticutLight Power Co. v. Costello, 161 Conn. 430, 441,288 A.2d 415 (1971).
The commission, however, did violate the charter when it did not schedule examinations to fill the vacancies that occurred on June 27, 1992, and June 29, 1992. The evidence at trial demonstrates that after January 19, 1992, nineteen Bridgeport fire captains were qualified for the examination. Therefore, the reason the examination was not given to fill the two July, 1991 vacancies does not apply. The commission should have scheduled examinations after those vacancies.
The union and commission suggest different dates for the examination. The union proposes that the examination should have been scheduled within one hundred twenty days of January 19, 1992, which is the date when a group of Bridgeport Fire Captains met the requirement of one year in grade experience. The commission argues that it could schedule the examination in March, 1993, which is the date the examination was actually held. The court rejects both of these arguments.
Section 9 states "[w]hen a position in a promotion classshall become vacant . . . and no appropriate re-employment list or employment list exists, the personnel directorshall, within one hundred and twenty days of the date of CT Page 1443 the creation of the vacancy, hold a promotion test for suchclass." (Emphasis added.) "The principles of statutory construction apply to municipal charters. Buonanno v.Merly, 4 Conn. App. 148, 149, 493 A.2d 245 (1985). They also apply to civil service rules and regulations; see Jones v.Civil Service Commission, 175 Conn. 504, 508-09,400 A.2d 721 (1978); which have the force and effect of law. Gilbertv. Civil Service Commission, 158 Conn. 578, 582, 265 A.2d 67
(1969)" New Haven Firebird Society v. Board of FireCommissioners, supra, 32 Conn. App. 590. When there is no ambiguity, a statute should be given is plain and ordinary meaning. Kilduff v. Adams, Inc., 219 Conn. 314, 337,593 A.2d 478 (1991).
Section 9 clearly connects the giving of an employment examination to the creation of a vacancy.[9] A vacancy triggers the need for an examination.[10] Thus, when the vacancies occurred in June, 1992, and Bridgeport Fire Captains were eligible and the commission did not schedule an examination within one hundred twenty days, the commission violated the city charter. This violation entitles the plaintiff to a remedy.
 III
The union and the commission dispute the scope of the remedy for the commission's violation of the city charter. In addition to damages, the union seeks a permanent injunction that enjoins the commission from allowing non-qualified candidates to participate in the examination process for the position of Fire Assistant Chief Engineer and a declaratory judgment that rules that only those candidates who have served as a Bridgeport Fire Captain for one year before May 18, 1992, are eligible to participate in the promotion process. In effect, the union wants the eligibility list "reconstructed" to eliminate people who became eligible for promotion between May 18, 1992, and March 23, 1993. Citing Walker v. Jankura, 162 Conn. 482,294 A.2d 536 (1972) and Doszpoj v. Civil Service Commission,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 273163S (July 14, 1992, Spear, J.), the union argues that reconstruction is necessary. The commission and Schiller seek to distinguish Walker, citing Haggerty v.Parniewski, 11 Conn. App. 37, 525 A.2d 984 (1987). The commission and Schiller also argue that reconstruction is not necessary because the union has not suffered irreparable harm. CT Page 1444
"The party seeking injunctive relief must allege and prove irreparable harm and lack of an adequate remedy at law. . . . The issuance of injunctive relief is within the discretion of the trial court." (Citation omitted.) New Haven Firebird Societyv. Board of Fire Commissioners, supra, 32 Conn. App. 594
(affirming trial court's decision to enjoin a city from promoting individuals just prior to the expiration of promotion eligibility lists to positions not yet vacant); see also Walton v. Townof New Hartford, 223 Conn. 155, 165, 612 A.2d 1153 (1992).
"[O]nce the deadline for a mandatory event has passed, the clock cannot be turned back. Once the 120 day period after a vacancy occurs has expired, reconstruction is the only possible way to give effect to that provision. Applicants thus compete against only those eligible as of the time the test should have been given. Even when the delay is not due to corruption, as is the case here, eligibility reconstruction makes sense and is, in fact, required." Doszpoj v. Civil Service Commission,
supra, p. 11. Connecticut appellate courts have discussed revising eligibility lists in Santora v. Miklus,199 Conn. 179, 506 A.2d 549 (1986); Walker v. Jankura,
supra, 162 Conn. 482; and Haggerty v. Parniewski,
supra, 11 Conn. App. 37.
Reconstruction of an eligibility list attempts to recreate the list without any intervening illegalities. In Santora v.Miklus, supra, 199 Conn. 191, the court stated: "The commission's decision to exclude officers who had not been eligible for promotion prior to October 31, 1976, represented an attempt by the commission to satisfy [Connecticut District court] Judge Newman's clarification order in light of the requirements of Bridgeport civil service law. Had the examination been held in 1976 as required by law, the eligibility date would have been October 31, 1976. Had the examination been held in 1980 as contemplated by Judge Newman's clarification order, the eligibility date would have been October 31, 1976. Thus, in setting October 31, 1976, as the date of eligibility for the 1983 examination, the commission could reasonably have been trying to recreate the circumstances that had prevailed at the times that the examination should have been held."
Following Santora, this court will recreate the eligibility list while eliminating the violations of the city charter.[11] This court has the authority to order a civil service commission to remove from an eligibility list the people CT Page 1445 who are included only because of a violation of the civil service rules and regulations. Walker v. Jankura, supra,162 Conn. 490-91.
Although the union presses for May 18, 1992, as the deadline date, this date has no bearing on the chronology in this case because the city charter did not require the commission to promote someone at that time. The commission, however, was required to schedule an examination for Fire Assistant Chief Engineer within one hundred twenty days of June 27, 1992, which is when a vacancy occurred. One hundred twenty days after June 27, 1992, is October 25, 1992. Hence, the court orders that October 25, 1992, is the date by which candidates must have acquired one year time in grade experience as a Bridgeport Fire Captain to be eligible for a promotion to Fire Assistant Chief Engineer. The commission shall remove from the promotion list the name of any candidate who sat for the promotion examination on March 23, 1993; March 25, 1993; and March 26, 1993 who had not attained one year in grade experience as a Bridgeport Fire Captain by October 25, 1992.
Since the record is devoid of any evidence of money damages, none is awarded.
BY THE COURT
Levin, J.