******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

EDWARD MCKIERNAN *v.* CIVIL SERVICE
COMMISSION OF THE CITY OF
BRIDGEPORT ET AL.
(AC 40377)

Sheldon, Keller and Flynn, Js.

*Syllabus*

The plaintiff police officer brought this action against the defendants, the
Civil Service Commission of the City of Bridgeport and its president
and personnel director, seeking a declaratory judgment that, inter alia,
he be allowed to retake the oral assessment portion of the city's 2015
detective promotional examination. Pursuant to the city's charter, the
commission is responsible for formulating and administering promo-
tional examinations for city employees to determine the relative qualifi-
cations of persons seeking promotion to any class of position and their
capacity to perform the duties of the position. I Co., which specializes
in the development and administration of promotional examinations for
public safety agencies, was retained to develop, administer and grade
the city's 2015 police detective promotional examination, and M, I Co.'s
project manager, supervised the project. Seventy-one candidates partici-
pated in the oral assessment, and, upon arrival at the test center, each
candidate, including the plaintiff, was given and told to read carefully
a four page document that provided important orientation information
and instructions concerning the oral assessment process. The oral
assessment was administered in groups of seven candidates every thirty
minutes. M introduced the orientation documents to the plaintiff's group
in a preparation room, gave the candidates time to review them and
asked the candidates if there were any questions and whether each
candidate had all of the test materials. No one in the plaintiff's group
reported missing any documents. Following the preparation session,
the candidates were escorted by a proctor to their individual assessment
rooms. As M brought in the next group of candidates to the preparation
room, he was informed by K, the proctor assigned to the preparation
room, that someone had left a document on the table in the room.
During his oral assessment, the plaintiff complained to his proctor that
he was not given all of the necessary test materials. M determined that,
in fairness to everyone taking the examination, nothing could or should
be done with respect to the plaintiff's complaint. Following a trial, the
court rendered judgment in favor of the defendants, concluding that the
plaintiff failed to sustain his burden of proving that the defendants'
actions in administering the examination were arbitrary, capricious or
illegal. On appeal to this court, the plaintiff claimed that the trial court
erred by rendering judgment in favor of the defendants on the basis of its
finding that the challenged examination was administered in accordance
with the requirements of the city charter. *Held*:

1. The trial court's finding that the test administrators provided the plaintiff
with all of the necessary test materials for the oral assessment was not
clearly erroneous; that court's finding that the plaintiff had received the
allegedly missing test materials but that he left them on the preparation
room table when he moved from the preparation room to the assessment
room was supported by testimony in the record from K, who testified
that immediately after the plaintiff's test group left the preparation room,
she discovered a document on the preparation room table with the I
Co. logo printed on its first page and that she had informed M of this
soon thereafter, and from M, who confirmed in his testimony that K
gave him that document when he was bringing the next group of candi-
dates into the preparation room.

2. The trial court's finding that M's description of the procedures that he
followed during the examination was corroborated by other witnesses
was not clearly erroneous; the record indicated that K and the other
participants from the plaintiff's test group testified regarding many of
the same procedures that M had described and that were followed
during the examination, and that their testimony corresponded to M's
testimony, and the court's decision to credit the testimony of M and K

regarding the discovery of test materials in the preparation room after the plaintiff's test group had left the room was a factual determination that it was empowered to make, which this court declined to disturb on appeal.

3. The plaintiff's claim that the trial court erred in concluding that the examination was administered in a reasonable manner even though the test administrators failed to take any steps to provide him with the allegedly missing test materials after they were informed of his complaint was unavailing; because that court reasonably found that the plaintiff was provided with all of the necessary test materials in the preparation room, M's decision not to bring the plaintiff the materials that he had left behind did not indicate that the examination was administered in an unreasonable or arbitrary manner, nor did it undermine the policy underlying the civil service legislation to eliminate partisanship and favoritism and to ensure the appointment to the position persons whose merit and fitness have been determined by proper examination, as the administrators thereby ensured that equal treatment was given to all candidates taking the examination by refusing to interrupt the plaintiff's strictly timed oral assessment or to provide him with additional time and materials that the other candidates were not granted.

4. The trial court did not err in concluding that the oral assessment portion of the examination was given in compliance with the requirements of the city charter despite the lack of a system to keep track of the test materials that were provided to the candidates, the oral assessment having been administered in an organized manner and carefully formulated to fairly determine the capacity of each candidate.

5. The plaintiff could not prevail on his claim that the examination was unreasonable and arbitrary because it was not administered in a uniform manner, which was based on his claim that the instructions given to the candidates on a video in the assessment room were different from those set forth in the documents given to them in the preparation room; because the record was silent as to the trial court's findings with respect to the instructions given on the video in the assessment room, this court was left to speculate about whether these instructions were different from those that the candidates had previously received or that any such differences impacted the reasonableness of the examination, and, therefore, this court presumed that the trial court undertook the proper analysis of the law and the facts in arriving at its conclusion that the examination was administered in accordance with the requirements of the city charter.

Argued January 7—officially released April 2, 2019

*Procedural History*

Action for a declaratory judgment that, inter alia, the plaintiff be allowed to retake the oral assessment portion of a certain police detective promotional examination, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Michael Hartmere*, judge trial referee; judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed.*

*John T. Bochanis*, for the appellant (plaintiff).

*John P. Bohannon, Jr.*, deputy city attorney, for the appellees (defendants).

*Opinion*

SHELDON, J. The plaintiff, Edward McKiernan, appeals from the trial court's judgment, rendered after a trial to the court, denying his request for a declaratory judgment allowing him to retake the oral assessment portion of the city of Bridgeport's 2015 detective promotional examination and prohibiting the defendants[1] from certifying the results of that examination or promoting candidates on the basis of those results. On appeal, the plaintiff claims that the trial court erred by rendering judgment in favor of the defendants on the basis of its finding that the challenged examination was administered in accordance with the requirements of the charter of the city of Bridgeport. We affirm the judgment of the trial court.

The following procedural history and facts, as found by the trial court, are relevant to our disposition of this appeal. The plaintiff has been employed as a Bridgeport police officer since May, 2000. The defendant Civil Service Commission of the City of Bridgeport (commission) is responsible for formulating and administering promotional examinations for certain employees of the city of Bridgeport. In March, 2015, the commission held a promotional examination for the position of detective, in which the plaintiff participated. The examination consisted of two parts: a written multiple choice portion and an oral assessment. The latter portion of the examination, which was administered on March 16, 2015, is the subject of this appeal.

Seventy-one candidates, including the plaintiff, participated in the oral assessment portion of the promotional examination for the position of detective on that date. The trial court found the following: "Upon arrival each candidate was given a four page document entitled 'Bridgeport Police Department–Detective Assessment Candidate Introduction/Orientation' which, in pertinent part, provided: Welcome to the Detective Assessment Process. This document will provide important information about your participation in this assessment process. Please read over this document carefully. . . . Following this orientation period, you will be taken to a preparation room. In this room, you will receive specific instructions for the various components in this assessment process, a pad of paper and a writing utensil. . . . The assessment process consists of a series of components that will be performed in a single assessment room and video-recorded.

"[The] [f]ollowing is an overview of the components and their order: Presentation: Your primary task in the preparation room should be to review the warrant affidavit, and prepare your response to the presentation exercise. . . . Scenario-based interview: You will be presented with several distinct scenarios involving crimes and will be asked to respond to them as if you

were the detective assigned to the case. The first scenario in this component will not be given to you in the preparation instructions, rather it will be read to you via the video once in the assessment room. The scenario will also be presented on a card on the desk and you will be instructed when to flip it over. Once it is read to you, you must immediately provide your response. The second and third [scenarios] in this component will be given to you in the preparation instructions. These scenarios will not be re-read to you in the assessment, the video will simply ask you to provide your response[s]. You may use your time in the preparation room to review the scenarios. . . .

"Procedural Interview: Immediately after responding to the scenario-based questions, you will respond to two (2) questions that deal with the process of interviewing and interrogating victims/suspects/witnesses. You may use your time in the preparation room to review Question 1. Question 2 will be read to you via the video once in the assessment. . . .

"Preparation: When it is your turn to start the assessment, you will be placed in a preparation room and will be provided with the presentation instructions along with the warrant affidavit; two (2) of the scenario-based interview scenarios; and one (1) of the procedural-based interview questions. You will have thirty minutes (30:00) to read these instructions and prepare any notes. . . . Transition: After preparation, proctors will escort you promptly to the assessment room. . . .

"Assessment: You will be placed in an assessment room. There will be a proctor in this room who will start an audio/video recording that will guide you through the assessment process. The proctor will also start two video cameras that will record your performance. Once the audio/video starts, it will instruct you to respond to the following items in this order . . . . Delivery of responses to [s]cenario-based [i]nterview questions: Scenario 1: Scenario 1 WILL be read to you via the video. It will also be imprinted on a card that will be on the desk in the assessment room. You will have four minutes (4:00) to respond to this scenario. Scenario 2: Scenario 2 WILL NOT be read to you via the recording. The video will simply prompt you when to respond. You will have four minutes (4:00) to respond to this scenario. Scenario 3: Scenario 3 WILL NOT be read to you via the recording. The video will supply prompt you when to respond. You will have four minutes (4:00) to respond to this scenario.

"Delivery of responses to [p]rocedural-based [i]nterview questions: Question 1: Question 1 WILL NOT be read to you via the recording. The video will simply prompt you when to respond. You will have five minutes (5:00) to respond to this question. Question 2: Question 2 WILL be read to you via the video. It will also be printed on a card that will be on the desk in the assess-

ment room. You will have two minutes (2:00) minutes to respond to this question. . . . Remember to read over the preparation document carefully and completely. Everything you need to know will be contained within. . . .

"When [the plaintiff] arrived at the assessment center, he was given a complete copy of these Candidate Introduction/Orientation instructions and was told to study them carefully. [He] testified that he did so, and knew that it was imperative to be able to follow the instructions during the examination process.

"The city of Bridgeport had retained a Chicago based company, Industrial and Organizational Solutions (IO Solutions) to develop, administer and grade the 2015 Bridgeport police detective promotional examination. IO Solutions specializes in the development and administration of entry level and promotional examinations for public safety agencies. Brian Marentett, formerly IO Solutions' project manager, personally supervised the development, administration and scoring of the promotional examination. . . . Marentett holds a bachelor's degree in psychology, a master of arts degree in industrial and organizational psychology, and a Ph.D in industrial and organizational psychology. Industrial and organizational psychology is the application of psychological principles and theories in the workplace. It is the scientific method to study workplace human phenomena to assess job applicants or incumbent candidates for promotional purposes. . . .

"Marentett developed the detective's promotional exam by studying the job of police detective and identifying the critical knowledge, skills and abilities that should be assessed in the examination process. This process is known as a job analysis. He interviewed current detectives and supervisors of detectives, asked about the daily duties and the tasks performed, and what knowledge they believed was essential to the job. That information was used to compile a questionnaire which was then administered to incumbent detectives. Data and information was then collected and analyzed in order to identify what the essential knowledge, skills and abilities are for the position of detective.

"For the 2015 detective examination, all candidates were administered the exact same scenarios and questions during the oral assessment. The candidates' oral responses to various scenario based questions were then scored in accordance with structured preestablished scoring criteria. The overall goal of the oral component was to assess the critical knowledge, skills and abilities for each candidate in the exact same way, using the exact same materials, time and assessment process. Marentett tried to ensure that each candidate was treated exactly the same way to be sure that the result of the assessment, which is the score, was going to be a valid score, and reflected the candidate's performance

and nothing else.

"[T]he oral examination was administered during morning and afternoon sessions, in groups of seven candidates every thirty minutes. [The plaintiff] was one of seven candidates in the 10:30 a.m. group. Marentett introduced the orientation documents . . . to them and gave the candidates ten minutes to review the documents. Ten to eleven minutes later, Marentett returned and asked if there were any questions. . . . Marentett had personally prepared and checked all of the materials which he passed out. He asked each candidate whether they had all of the materials. He then read some instructions to them and told them to begin their preparation session, which was thirty minutes, and he told them it was timed. Thirty minutes later, Marentett went back to the preparation room, escorted them out of the room and had a proctor take them to their individual assessment room[s]. Marentett [then went] back to the sign in table to give the orientation introductions to the next group of candidates.

\* \* \*

"As Marentett was bringing the next group of candidates to the preparation room, the plaintiff and others in his group were responding to questions in front of a video camera. When Marentett got to the preparation room, [a proctor] handed him a candidate preparation document, and informed him that someone had left the document on the table in the preparation room. This was the only document left in the preparation room during the oral assessment process. Marentett continued his set routine for administering the oral assessment.

"Marentett did not know which candidate left the candidate preparation document in the preparation room, but was not concerned since based on his experience, some candidates prefer to take notes and deliver responses from their notes rather than take the document with them. He saw no reason to attempt to identify the person who had left the document in the preparation room or to disturb candidates who were in the process of giving video presentations. The schedule was very tight, timed down to the minute, and Marentett did not want to interfere with anyone's response time, and thereby place them at a disadvantage.

"Marentett's description of his administration of and procedures followed during the oral examination was corroborated by other witnesses, including candidates taking the examination in the plaintiff's group. No one in the plaintiff's group reported missing any documents during the preparation time.

"The video of [the] plaintiff's oral examination shows that he had no trouble following the instructions for answering the warrant affidavit presentation which appear at the top of page two of the candidate prepara-

tion document. However, during his examination the plaintiff claimed that he was never given the scenarios and procedural based questions described in the candidate preparation document. . . . [The plaintiff] complained to the proctor during the examination . . . . Marentett had made the determination that nothing could or should be done as a matter of fairness to everyone taking the examination.

"Thereafter, [the plaintiff] filed an appeal with the [commission]. There, as in the present case, [he] claimed that he received the search warrant affidavit but was never given nor received any additional test materials. The commission denied the plaintiff's appeal." (Emphasis omitted.)

The plaintiff commenced the underlying action on July 29, 2015. After a three day trial, the court found that the plaintiff failed to sustain his burden to prove that the defendants' actions were arbitrary, capricious or illegal. The court determined that "[t]he credible evidence demonstrated that the defendants administered a professionally developed job related promotional examination in a uniform manner to all candidates, in accordance with clearly delineated rules and procedures. The instructions and procedures were structured to be identical for all candidates, and Marentett was meticulous in ensuring that the oral examination was administered fairly and uniformly to all candidates. [Marentett] testified that although candidates were not specifically scored on how well they followed the instructions, the instructions contained in the documents were part of the assessment process. The credible evidence demonstrated that the plaintiff left the instructions he had been given behind when he went to the [assessment] room. If, as he claimed, he was given grossly incomplete instructions and materials in the preparation room, he failed to follow repeated instructions to so indicate, even when questioned by [Marentett]." Accordingly, the trial court rendered judgment in favor of the defendants. This appeal followed.

The plaintiff claims that the trial court erred by (1) finding that the administrators provided him with all of the necessary test materials for the oral assessment, (2) finding that Marentett's description of the procedures that he followed during the examination were corroborated by other witnesses, (3) concluding that the test was properly administered even though neither the commission nor IO Solutions took any steps to provide him with the allegedly missing test materials when they were informed of his complaint, (4) concluding that the test was properly administered even though the commission had no procedure in place to account for the test materials in order to ensure that each candidate received them, and (5) concluding that the test was properly administered even though the assessment video gave different instructions from those given in the

test materials that were distributed to the candidates in the preparation room. We disagree with the plaintiff's claims.

Before turning to the merits of this appeal, we first set forth the standard of review that governs this appeal. "[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005).

Section 207 (6) of the charter of the city of Bridgeport (charter) provides that the personnel director of the commission shall "provide for, formulate and hold competitive tests to determine the relative qualifications of persons who seek employment or promotion to any class of position and as a result thereof establish employment and reemployment lists for the various classes of positions . . . ." Section 211 (a) of the charter provides in relevant part that "[t]he personnel director shall, from time to time, as conditions warrant, hold tests for the purpose of establishing employment lists for the various positions in the competitive division of the classified service. Such tests shall be public, competitive and open to all persons who may be lawfully appointed to any position within the class for which such examinations are held with limitations specified in the rules of the commission . . . . The personnel director shall hold promotion tests whenever there shall be an opening in a superior class to be filled. . . . All tests shall be practical, and shall consist only of subjects which will fairly determine the capacity of the persons examined to perform the duties of the position to which appointment or promotion is to be made . . . ."

"As with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary. . . . In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws.

"In addition, the present case involves the city's civil service system, and we previously have emphasized the importance of maintaining the integrity of that system. Statutory provisions regulating appointments under civil service acts are mandatory and must be complied

with strictly. . . . The [civil service] law provides for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness has been determined by examination, and to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments. . . . A civil service statute is mandatory as to every requirement." *Broadnax* v. *New Haven*, 270 Conn. 133, 161, 851 A.2d 1113 (2004). At trial in the present case, the parties agreed that in order for the plaintiff to prevail he must establish that the promotional examination was created and administered unreasonably, arbitrarily, illegally or in abuse of discretion. See *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 51, 660 A.2d 850 (1995).

The plaintiff first claims that the court erred in finding that the test administrators provided him with all of the necessary test materials for the oral assessment, specifically, the preparation document that contained written instructions for two scenario based questions and one procedural question. As this issue presents a question of fact, our review is limited to deciding whether the challenged finding was clearly erroneous. "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 858, 905 A.2d 70 (2006). The court found that the plaintiff received the allegedly missing test materials but that he left them on the preparation room table when he moved from the preparation room to the assessment room. This finding is supported in the record by the testimony of Marentett and Kathryn Klett, the proctor assigned to the preparation room for the day of the oral assessment. Klett testified that, immediately after the plaintiff's test group left the preparation room, she discovered a document lying on the preparation room table that had the IO Solutions logo printed on its first page and that she informed Marentett of this soon thereafter. Marentett confirmed that Klett gave him this document when he was bringing the next group of candidates into the preparation room. The court's finding that the document discovered by Klett was the allegedly missing test materials and that the plaintiff had left those materials on the preparation room table is supported by the record and, therefore, was not clearly erroneous.

The plaintiff next claims that the court erred in finding that Marentett's description of his administration of the examination and the procedures that he followed during the examination were corroborated by other witnesses. As this is also a question of fact, our review is limited to deciding whether such finding was clearly erroneous. We conclude that it was not. The procedures

that were followed during the examination were testified to at length by Marentett. Klett testified regarding many of those same procedures that she had personally observed, including that Marentett asked the participants if they had received all of the necessary test materials as described in the "introduction/orientation" document when they arrived in the preparation room. The other participants from the plaintiff's test group also testified about the procedures they followed during the oral assessment, which corresponded to Marentett's testimony. The plaintiff contends that the participants from his test group testified that no documents were left on the table at the end of the preparation session, contrary to the testimony of Marentett and Klett. This, however, does not establish that the court erred in finding that Marentett's testimony describing the procedures he followed during the examination was corroborated at trial. To the contrary, the court's decision to credit the testimony of Marentett and Klett regarding the discovery of certain test materials in the preparation room after the plaintiff's test group had left it was a factual determination it was empowered to make, which this court will not disturb on appeal.

The plaintiff next claims that the court erred in finding that the examination was administered in a reasonable manner because neither the commission nor IO Solutions took any steps to provide the plaintiff with the allegedly missing test materials after they were informed of his complaint. We disagree. As an initial matter, this claim assumes a fact that is inconsistent with the trial court's findings. As a premise of this claim, the petitioner assumes as true his contention that he was never provided with all of the necessary test materials. As previously addressed, however, the court reasonably found that the plaintiff was provided with these materials but that he left them on the table in the preparation room. Therefore, the issue is more accurately stated as whether, having already provided the plaintiff with the necessary test materials, it was unreasonable for the test administrators to not bring those materials to him in the assessment room upon his request.

In *Mattera* v. *Civil Service Commission*, 273 Conn. 235, 237, 869 A.2d 637 (2005), our Supreme Court affirmed a civil service commission's discretionary decision to set a three year service requirement for a candidate to be eligible for promotion to a higher rank even though the city charter simply required candidates to hold the position from which they sought to be promoted for one year or more. Importantly, the court did not conclude that the commission in that case had unfettered discretion to set a minimum service requirement, rather, it concluded that the requirement it established did not result from an abuse of discretion because it was a "rational standard" and a "bona fide employment criterion . . . [that] provides both a stable work force and fiscal stability." (Internal quotation marks

omitted.) Id., 238–39. "In other words, [our Supreme Court] concluded that the . . . commission had exercised its authority in that case in a manner that furthered, rather than undermined, the purposes underlying the civil service system. Specifically, in *Mattera*, [our Supreme Court] fully adopted the opinion of the trial court, which reasoned: [I]t cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil service system is built. Any violation of the law enacted for preserving this system, therefore, is fatal because it weakens the system of competitive selection which is the basis of civil service legislation. . . . Strict compliance is necessarily required to uphold the sanctity of the merit system. . . . [It is] [s]trict, not technical, compliance [that] is required. . . . Only rational results are allowed. . . .

"The object of providing for civil service examinations is to secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination. . . .

"Our [Supreme Court's] holding in *Mattera* . . . underscores that the authority of appointed boards must be exercised in conformity with the policy underlying a city's civil service legislation. . . . [I]n *New Haven Firebird Society* v. *Board of Fire Commissioners*, 32 Conn. App. 585, 591–92, 630 A.2d 131, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993), [this court] held that the city of New Haven did not have the authority to construe its civil service rules to allow it to designate candidates for promotion in advance of a vacancy, even though the defendant firefighters' union contended that the practice facilitated filling expected vacancies. Citing to the principles . . . later underscored in *Mattera* . . . [we] concluded that such a construction of the rules was not reasonable, noting that its conclusion is forged by the deeply rooted policies that support civil service examinations." (Internal quotation marks omitted.) *Kelly* v. *New Haven*, supra, 275 Conn. 617–19.

The administrators' decision not to provide the plaintiff with the allegedly missing test materials once he entered the assessment room was not counter to the policy underlying the city's civil service legislation. As the court noted in its memorandum of decision, the administrators took steps to ensure that the examination was administered uniformly to all candidates so that the scores accurately reflected the candidates' capacity to perform the duties of the detective position. Because the facts, as found by the court, are that the plaintiff received all of the necessary test materials in

the preparation room in order to prepare for the oral examination, Marentett's decision not to bring the plaintiff the materials that he had left behind does not indicate that the test was administered in an unreasonable or arbitrary manner, nor does it undermine the policy underlying the civil service legislation to eliminate partisanship and favoritism and to ensure the appointment to the position those whose merit and fitness have been determined by proper examination. To the contrary, the administrators thereby ensured that equal treatment was given to all candidates taking the examination by refusing to interrupt the plaintiff's strictly timed oral assessment or to provide him with additional time and materials that the other candidates were not granted. We therefore reject this claim.

The plaintiff next claims that the administrators should have employed a labeling system to keep track of the documents that were given to the participants to ensure that each participant received all of the necessary test materials and that their failure to do so resulted in an unreasonable examination. We disagree. As indicated in the court's memorandum of decision, the test was thoughtfully formulated and administered fairly and uniformly to all candidates. The benefit of hindsight may reveal ways in which the administration of the test could have been improved upon but, even so, that does not render the test as given unreasonable, arbitrary, illegal, or an abuse of discretion. The oral assessment was administered in an organized manner and carefully formulated to fairly determine the capacity of the candidates. The trial court did not err by concluding that the oral assessment portion of the detective promotional examination was given in compliance with the requirements of the charter despite the lack of a document tracking system. We, therefore, reject this claim.

Finally, the plaintiff claims that the instructions given to the candidates on the video in the assessment room were different from those set forth in the documents given to the candidates in the preparation room and, thus, that the examination was not administered in a uniform manner, resulting in an unreasonable and arbitrary examination. "In Connecticut, our appellate courts do not presume error on the part of the trial court. . . . Rather, the burden rests with the appellant to demonstrate reversible error." (Citation omitted; internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 145, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014). Because the record is silent as to the court's findings with respect to the instructions given on the video in the assessment room, or whether it even considered the plaintiff's argument in this regard at trial, we are left to speculate about whether these instructions were different from those that the candidates had previously received or that any such differences impacted the reasonableness of the examination. We, therefore, presume that the trial court undertook

the proper analysis of the law and the facts in arriving at its conclusion that the examination was administered in accordance with the requirements of the charter.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants in this action are the Civil Service Commission of the City of Bridgeport (commission); Leonor Guedes, the commission's president; and David Dunn, the commission's personnel director.

———————————————